UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------X
CURTIS & ASSOCIATES, P.C. and W. ROBERT
CURTIS, Sc.D., J.D.,

    Plaintiffs,                              **MEMORANDUM & ORDER**

 - against -                                   09-CV-890 (KAM) (RER)

THE LAW OFFICES OF DAVID M. BUSHMAN, ESQ.;
DAVID M. BUSHMAN, ATTORNEY AT LAW; DAVID
M. BUSHMAN, ESQ.; JANET TURANSKY
CALLAGHAN; STEVI BROOKS NICHOLS; JEFFREY
LEVITT, ESQ.; JEFFREY LEVITT, ATTORNEY AT
LAW; HERBERT MONTE LEVY, ESQ.; LAW OFFICES
OF HERBERT MONTE LEVY, ESQ.; JOHN DOE,
ESQ.; LAW OFFICES OF JOHN DOE, ESQ.; JANE
DOE, ESQ.; LAW OFFICES OF JANE DOE, ESQ.;
and EILEEN DEGREGROIO,

    Defendants.
------------------------------------------X
**MATSUMOTO,** UNITED STATES DISTRICT JUDGE:

       In a fifty-eight page, two hundred and sixty paragraph

amended complaint attaching one hundred fifty-four pages of

exhibits, Curtis & Associates, P.C. (the "Curtis Law Firm"), and

W. Robert Curtis, Sc.D., J.D. ("Curtis"), (together,

"plaintiffs"), bring seventeen causes of action against The Law

Offices of David M. Bushman, Esq., David M. Bushman, Attorney at

Law, and David M. Bushman, Esq. (collectively, the "Bushman

defendants"); Jeffrey Levitt, Esq. and Jeffrey Levitt, Attorney

at Law, (collectively, the "Levitt defendants"); Herbert Monte

Levy, Esq. and Law Offices of Herbert Monte Levy, Esq.

(collectively, the "Levy defendants"); Eileen DeGregorio

("DeGregorio"), Janet Turansky Callaghan ("Turansky"); and Stevi

Brooks Nichols ("Nichols");[1] (together "defendants").  Plaintiffs

seek recovery under the Racketeer Influenced and Corrupt

Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq., for

economic damages allegedly caused to their business and property

(the "federal claims"), as well as damages under various New

York statutory and common law causes of action (the "state law

claims").  (See ECF No. 2, Amended Verified Complaint

("Complaint" or "Compl.").)  Pursuant to 28 U.S.C. § 1331(a),

federal question jurisdiction is predicated solely on the first

ten causes of action which arise under the federal RICO statute.

(Id. ¶ 4.)[2]

The Bushman defendants, the Levitt defendants, the

Levy defendants, DeGregorio, Turansky, and Nichols each move

separately to dismiss the amended complaint on a variety of

grounds, including for failure to state a claim upon which

relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)"), and plaintiffs oppose.

---

[1]     The Complaint refers to "Janet Turansky Callaghan" as "Callaghan"
(compl. ¶ 12), and defendant "Stevi Brooks Nichols" as "Brooks."  However, in
their own moving papers these defendants refer to themselves as "Turansky"
and "Nichols," respectively, and accordingly this memorandum and order does
the same.

[2]     The original complaint (ECF No. 1,) Amended Complaint (ECF No. 2), and
the Proposed Second Amended Complaint (ECF No. 174-1) each apparently omit a
digit by citing to "28 U.S.C. § 133(a)" as the basis for the court's
jurisdiction.  (See ECF No. 1 at ¶ 4, ECF No. 2 at ¶ 4, ECF No. 174-1 at ¶
4.)  Because plaintiffs do not plead diversity jurisdiction, the court
interprets plaintiffs' Complaint as alleging federal question jurisdiction
pursuant to 28 U.S.C. § 1331(a).

Additionally, after defendants' various motions to dismiss had been fully briefed and were pending before the court, plaintiffs sought and received permission from the court to move to amend/correct/supplement the complaint, plaintiffs so moved, and defendants all opposed. Plaintiffs also move to disqualify Herbert Monte Levy, Esq. ("Levy") as counsel for defendant DeGregorio, and Jeffrey Levitt, Esq. ("Levitt") as counsel for defendant Turansky, and Levy and Levitt oppose. Finally, defendants Levitt and Turansky move for sanctions against plaintiffs pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").

For the reasons that follow, the motions to dismiss are granted in their entirety as to the federal RICO causes of action and the court declines to exercise supplemental jurisdiction with respect to the state law causes of action. The motion to amend or supplement the complaint is denied as futile, the motions to disqualify Levitt and Levy as counsel are denied as moot, and the motion for sanctions is denied.

## BACKGROUND

A court considering a motion to dismiss pursuant to Rule 12(b)(6) must accept all well-pleaded factual allegations of a complaint as true, but need not give any effect to legal conclusions couched as factual allegations. <u>Starr v. Sony BMG</u>

3

<u>Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010).  The factual

allegations[3] of the Complaint and the incorporated documents[4] are

as follows.

**A. The Parties**

Plaintiff Curtis is an attorney licensed in the State

of New York and the principal of the Curtis Law Firm, a New York

professional corporation with an office in Manhattan.[5]  (Compl. ¶

7-8.)  Since 1987, plaintiffs allege that the Curtis Law Firm

and its predecessor firm have been "the only law firm[s] in the

---

[3]     The Complaint is replete with conclusory assertions.  (<u>see, e.g.</u>,
Compl. ¶¶ 70-71 ("DeGregorio shaped her testimony to the false claims drafted
by Bushman in the phony malpractice case, startling the Court at times with
her Big Lies.  For example, DeGregorio . . . testified falsely that she
believed the Curtis Firm had 'stolen' her equitable distribution (a Big
Lie).").)  The court declines to undertake the unnecessary task of parsing
out each conclusory assertion scattered throughout the Complaint.  Rather,
the court has considered plaintiffs' factual allegations and where pertinent
to the court's analysis has noted throughout this memorandum and order its
disregard of specific conclusory allegations which are not entitled to the
presumption of truth.  <u>See, e.g.</u>, <u>Starr</u>, 592 F.3d at 321.

[4]     In accordance with the well-settled law of this Circuit, in deciding a
Rule 12(b)(6) motion to dismiss, the court will consider, along with the
Complaint, those documents submitted by the parties which are matters of
public record or which are deemed included in the Complaint.  <u>See</u> <u>Pani, M.D.
v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998) (noting that
it is "well-established" that a court may rely on matters of public record in
deciding a Rule 12(b)(6) motion to dismiss).  The court declines to decide
here the propriety of plaintiffs' unconventional "Rule 8(a)(2) Declaration."
(<u>See</u> ECF No. ECF No. 97, Plaintiffs' Rule 8(a)(2) Declaration in Opposition
to Defendants' Motions to Dismiss.)  While unaware of any Federal Rule
requiring such a declaration, the court notes that the attached documents
consist of court documents which are properly considered in deciding a Rule
12(b)(6) motion as matters of public record.  <u>See</u> <u>Pani</u>, 152 F.3d at 75; <u>see
also</u> <u>Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide,
Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004) (courts "may also look to public
records, including complaints filed in state court, in deciding a motion to
dismiss").

[5]     The Complaint interchangeably refers to Curtis and the Curtis Law Firm.
(<u>Compare, e.g.</u>, Compl. ¶ 89 (alleging Turansky's retention of the "Curtis Law
Firm") <u>and</u> <u>id.</u> ¶ 93 (alleging Turansky's subsequent further retention of
"Curtis").)  Accordingly, and because the distinction is immaterial to the
court's analysis, the court also interchangeably references these parties.

United States" to concentrate their practice on "representing clients injured by attorneys." (Id. ¶ 7.)

DeGregorio, Turansky, and Nichols are each former clients of the Curtis Law Firm. (Id. ¶¶ 12-14.) Bushman, Levitt, and Levy, are attorneys licensed to practice in the State of New York. (Id. ¶¶ 11, 15, 16.) Bushman practices law in Nanuet, New York through entities named the Law Offices of David M. Bushman, Esq. and David M. Bushman, Attorney At Law (id. ¶¶ 9-10), Levitt practices law in Amityville, New York through an entity named Levitt Attorney at Law (id. ¶15), and Levy practices law in Manhattan through an entity named Law Offices of Herbert Monte Levy (id. ¶ 16).[6] At various times, the Bushman defendants, the Levy defendants, and the Levitt defendants have each allegedly represented or counseled plaintiffs' former clients DeGregorio, Turansky, and Nichols in those clients' respective litigation against plaintiffs in New York State Court in Westchester County. (See, e.g., id. ¶¶ 49-51, 62, 104, 120, 124, 128.)

Tracing the evolution of DeGregorio, Turansky, and Nichols from Curtis Law Firm client to adversary, the Complaint

---

[6]     The Complaint similarly interchangeably references Bushman, Levitt, and Levy, with the legal entities through which Bushman, Levitt, and Levy respectively practice law. (See, e.g., Compl. ¶ 120 (alleging Levitt's personal representation of Turansky as a result of the substitution of Levitt Attorney at Law as Turansky's counsel.) Because of this, and because the differences are immaterial to the court's analysis, this memorandum and order also interchangeably refers to these individual and entity defendants.

organizes its allegations under headings "The Corruption of Defendant DeGregorio," "The Corruption of Defendant [Turansky]," and "The Corruption of Stevi Brooks Nichols."  This discussion follows that organization.

### B. The "Corruption" of Defendant DeGregorio

In December 2001, DeGregorio retained the Curtis Law Firm on an hourly fee basis to prosecute legal malpractice claims against her former divorce attorneys ("matrimonial malpractice claims").  (Compl. ¶ 43.)  The Curtis Law Firm also appeared on DeGregorio's behalf in her ongoing matrimonial case. (Id. ¶ 45.)  Despite a few early victories by the Curtis Law Firm, ultimately all of DeGregorio's matrimonial malpractice claims were dismissed on appeal.  (Id. ¶¶ 46-47.)

At the time of this dismissal, DeGregorio had an outstanding legal bill with the Curtis Law Firm for $120,000. (Id. ¶ 48.)  The Curtis Law Firm offered to settle DeGregorio's bill for $60,000 but DeGregorio rejected the settlement offer. (Id.)  Instead, DeGregorio retained the Bushman Law Offices to represent her on a contingent basis and filed a malpractice complaint "based on false allegations" against the Curtis Law Firm seeking disgorgement of all fees paid to the Curtis Law Firm exceeding $100,000.  (Id. ¶¶ 49-51, 56.)

The Curtis Law Firm notified its insurance carrier of this malpractice claim.  (Id. ¶ 52.)  In addition, the Curtis

Law Firm counterclaimed against DeGregorio for legal fees. (Id. ¶ 57.) The Curtis Law Firm also made a separate motion for a quantum meruit hearing to "determine the fair and reasonable value of the legal services rendered to" DeGregorio by the Curtis Law Firm while litigating the matrimonial malpractice claims. (Id. ¶ 66); see also DeGregorio v. Bender, 52 A.D.3d 645, 646 (N.Y. App. Div. 2d Dep't 2008) (describing history of fee dispute in DeGregorio's matrimonial malpractice action). Following that hearing, the state court awarded the Curtis Law Firm legal fees in the sum of $94,017.70. Bender, 52 A.D.3d at 646. On appeal, however, the Second Department reversed, finding that the hearing court had "failed to consider and give appropriate weight to all the relevant factors involved in valuing legal services, including the court's own finding of ethical violations committed by Curtis." Id.

In the course of prosecuting DeGregorio's "phony" malpractice claim against the Curtis Law Firm and defending against the Curtis Law Firm's fee claims, the Bushman Law Offices, Bushman Attorney at Law, and DeGregorio engaged in various "litigation activities." (Compl. ¶¶ 58, 60.) According to the complaint, these "litigation activities," constitute mail fraud. (Compl. ¶¶ 58, 60.) Specifically, in order to advance the "scheme to litigate" DeGregorio's alleged "fee obligation" to the Curtis Law Firm, the Bushman defendants allegedly

committed mail fraud by mailing to the court, other parties, witnesses, or counsel: (1) a Reply to the Counterclaims asserted by the Curtis Law Firm on February 9, 2007; (2) a Notice for Discovery on February 9, 2007; (3) a Cross-Notice to Take Deposition on February 9, 2007; (4) a Verified Bill of Particulars on February 22, 2007; (5) a letter regarding a subpoena served on a witness on June 14, 2007; (6) an Affirmation in Opposition to the Curtis Law Firm's Motion to Disqualify Bushman on March 17, 2007; (7) an Affirmation in Opposition to a Cross-Motion dated March 28, 2005; (8) a cover letter for Respondent's Post-Trial Brief dated September 15, 2006; (9) a cover letter transmitting Respondent's Proposed Counter-Judgment and Affirmation in Support dated October 13, 2006; (10) a letter to the court requesting a 90-day extension of time dated October 21, 2005; (11) a letter regarding service by fax dated November 9, 2006; and (12) a letter regarding DeGregorio's ability to satisfy any potential judgment dated December 29, 2006.[7] (Id. ¶¶ 58(A)-(E)-60(A), 68(A), 72(A)-(B), 78(A)-(C), Ex. 7.)

---

[7]     The court disregards plaintiffs' conclusory allegation that the litigation activities listed as items (10)-(12) above, namely, the 10/21/05 request for an adjournment, the 11/9/06 letter regarding service by fax, and the 12/29/06 letter regarding DeGregorio's ability to satisfy a potential judgment, were mailed "to assist in the sale of [DeGregorio's] Westhampton property with the intent to delay, hinder, and defraud" the Curtis Law Firm. (Compl. ¶ 78(A)-(C).)  Such conclusory allegations are not entitled to the presumption of truth.  See, e.g., Starr, 592 F.3d at 321.

After the Curtis Law Firm successfully moved to disqualify Bushman in DeGregorio's malpractice action against the Curtis Law Firm, the Levy Law Offices was substituted as DeGregorio's counsel. (Id. ¶¶ 59, 61-62.) The Levy Law Offices then negotiated a settlement of DeGregorio's malpractice action against Curtis. (Id. ¶ 62.) The complaint alleges that by engaging in "litigation activity" to "advance the fee dispute with the Curtis Law Firm," the Levy defendants and DeGregorio also committed mail fraud. (Id. 81, 88.) Specifically, the complaint alleges that the Levy defendants and DeGregorio engaged in mail fraud by mailing the following documents to the court, other parties, or counsel: (1) a letter to adjourn a motion filing deadline dated January 10, 2008; (2) sworn statements by DeGregorio opposing a fee hearing and the disqualification of Bushman as her attorney dated November 2, 2004 and March 26, 2005, respectively; (3) a letter to the court submitting a replacement Appellant's brief on May 31, 2007; (4) a handwritten note to the Appellate Division "misrepresenting" an agreement between the parties regarding the contents of the record dated July 26, 2007; (5) a letter to the Appellate Division regarding adjourning deadlines dated September 11, 2007; (6) a Notice of Settlement dated July 7, 2008; (7) a Notice of Entry by the Levy Law Office dated August 5, 2008; (8) an Answering Affirmation of Levy dated October 14, 2008; and (9)

an Order to Show Cause with Affirmation of Levy dated October 2, 2008. (Id. ¶¶ 64(A), 69, 81(A)-(C), 88(A)-(D).) The complaint further alleges that this mail fraud by the Levy defendants and DeGregorio is "ongoing" because the fee dispute between the Curtis Law Firm and DeGregorio has not yet been resolved and is "on the eve of trial."[8] (Id. ¶ 88(E).)

### C. The "Corruption" of Defendant Turansky

Turansky retained the Curtis Law Firm in June of 2002 to represent her in her divorce case. (Id. ¶ 89.) Turansky then retained the Curtis Law Firm to represent her in a quantum meruit hearing demanded by one of her former divorce attorneys to address his $28,000 retaining and charging lien. (Id. ¶¶ 90-93.) The twenty-eight day quantum meruit hearing was terminated by the court's issuance of a directed verdict in Turansky's favor on February 7, 2004. (Id. ¶¶ 97, 102.) Turansky then authorized the Curtis Law Firm to represent her in opposing the appeal of that directed verdict. (Id. ¶¶ 98-99.)

During the course of the earlier quantum meruit hearing, Turansky stopped paying her legal fees to the Curtis Law Firm, which then totaled $282,829.52. (Id. ¶ 96.) On November 29, 2004, on the same day that the Curtis Law Firm completed oral argument at the Second Department regarding the

---

[8]    Plaintiffs' proposed Second Amended Complaint alleges that a recent decision by the state court judge in connection with the fee dispute is under appeal. (See ECF No. 174-1, Plaintiffs' Proposed Amended Complaint ("Proposed Second Am. Compl.") ¶ 88(G).)

appeal from the directed verdict, Turansky terminated the Curtis

Law Firm "for cause." (Id. ¶ 101.) Turansky terminated the

Curtis Law Firm allegedly after conferring with Bushman, who

advised her that she could avoid paying the Curtis Law Firm's

legal fees if she made the termination "for cause" and sued the

Curtis Law Firm for malpractice. (Id. ¶ 102-103.) Bushman also

allegedly offered to represent Turansky for a "nominal fee" to

defend any fee claims against her by the Curtis Law Firm and on

a contingent basis to prosecute a malpractice action against the

Curtis Law Firm. (Id.)

   Turansky retained Bushman and filed a legal

malpractice complaint containing "knowingly false allegations"

against the Curtis Law Firm in December 2004. (Id. ¶¶ 104,

106.) The Curtis Law Firm notified its carrier of this

malpractice action and counterclaimed for fees. (Id. ¶¶ 105,

115.)

   By prosecuting Turansky's legal malpractice action

against the Curtis Law Firm and defending Turansky against the

Curtis Law Firm's fee claims, Bushman engaged in certain

"litigation activities" which plaintiffs allege constitute mail

fraud. (Id. ¶ 113.) Specifically, the Complaint alleges that

Bushman committed mail fraud by mailing to the court, parties,

or counsel: (1) an Affirmation in Opposition to Motion to

Dismiss dated February 17, 2005; (2) an Affirmation in

Opposition to Motion to Dismiss dated March 24, 2005; (3) a

Verified Bill of Particulars dated July 26, 2005; (4) a

Supplemental Verified Bill of Particulars dated October 4, 2005;

(5) an Affirmation in Opposition to Motion for Summary Judgment

dated February 7, 2006; (6) an Affirmation in Opposition to

total Disqualification dated February 13, 2006; and (7) a Motion

to Dismiss Third-Party Complaint dated August 7, 2006.  (Id. ¶

113.)  Additionally, Turansky allegedly engaged in mail and wire

fraud by:  (1) mailing a letter on February 26, 2007 to the

Court regarding her preference to have Bushman represent her in

defending against plaintiffs' fees counterclaims; (2) making

"repeated phone calls" from Connecticut to Bushman in New York

during several days prior to February 26, 2007; (3) mailing

"upon information and belief, numerous letters" to Bushman; (4)

presenting a "completely false affidavit" within a Notice of

Motion dated February 22, 2009 and mailed by Levitt; and (5)

committing "numerous other" unspecified acts of mail and wire

fraud.  (Id. ¶¶ 113(H), 115(A)-(C), 124(E).)

    The Curtis Law Firm succeeded in obtaining summary

judgment in Turansky's malpractice action against Curtis, but

lost its fee action against Turansky when the judicial hearing

officer determined that Turansky owed no fees to the Curtis Law

Firm. (Id. ¶¶ 114, 116.)  According to plaintiffs, the judicial

hearing officer's determination relied upon "false testimony" by

Turansky which tracked the "false claims" contained in Turansky's malpractice action against the Curtis Law Firm. (Id. ¶ 116.) After the judicial hearing officer's determination, the charging lien by the Curtis Law Firm on Turansky's equitable distribution was released by court order and Turansky allegedly invested the funds in a property in Connecticut.[9] (Id. ¶ 117.) Later, on appeal, the Second Department reversed and remanded the judicial hearing officer's determination for a new hearing on the Curtis Law Firm's fee claims against Turansky.[10] (Id. ¶ 119.)

After Bushman was disqualified as Turansky's attorney, Bushman allegedly recruited Levitt to substitute as the attorney for Turansky at the Second Department and for the rehearing. (Id. ¶¶ 112, 120, 124.) Levitt, allegedly with the assistance of Bushman, also committed mail and wire fraud in the course of representing Turansky by mailing: (1) a Notice of Motion and request for jury trial dated June 14, 2008; and (2) an Omnibus Notice of Motion dated February 22, 2009 seeking to preclude or delay a deposition and containing both an Amended Reply to

---

[9] The court disregards plaintiffs' conclusory allegations that (i) Turansky's alleged investment in Connecticut property rendered her "judgment proof" because the Connecticut property is protected by a "generous Homestead Act," and (ii) that this investment was "part of a plan . . . to hinder, delay, and defraud" the Curtis Law Firm as a future creditor. See, e.g., Starr, 592 F.3d at 321.

[10] Plaintiffs' proposed Second Amended Complaint does not contain any allegations as to recent developments in these proceedings. (See generally Proposed Second Am. Compl.)

Counterclaims and an affidavit by Turansky.  (Id. ¶ 124(A, C-E).)[11]  Finally, plaintiffs allege that because the litigation regarding the fee dispute is ongoing, "this mail fraud and wire fraud [on the part of Bushman, Levitt, and Turansky] is ongoing."  (Id. ¶ 124(F).)

### D. The "Corruption" of Defendant Nichols

Nichols became a client of the Curtis Law Firm on a contingency fee basis by a written agreement dated October 14, 1998.  (Id. Ex. 20 at 1.)  Nichols disputed $150,000 in fees allegedly earned by the Curtis Law Firm.  (Id. ¶ 128.)  On December 3, 2003, Nichols discharged the Curtis Law Firm allegedly for cause, and proceeding *pro se*, thereafter commenced a legal malpractice action against plaintiffs and others by a verified complaint dated January 9, 2009.  (Id. ¶ 125, Ex. 19 at ¶ 14, Ex. 20 at 3.)  The Curtis Law Firm notified its malpractice insurer of this new claim.  (Id. ¶ 126.)

Plaintiffs allege that Nichols has committed mail and wire fraud by mailing her verified complaint from Colorado, where she resides, to the New York Courts, as well as by mailing and faxing letters dated February 6, 17, 23, and 24, 2009 to

---

[11]    The court disregards the vague and conclusory allegations that during oral argument on January 26, 2009, "Levi [sic] made numerous confusing and misleading statements to the Court . . .  Whatever!!  Levitt is now under the control of Bushman and . . . has recently made up a new claim alleging that the Curtis Law Firm acted fraudulently [sic] [Turansky] retained it.  This is another Big Lie."  (Compl. ¶ 124(B).)  It is unclear whether plaintiffs intend to allege that such oral statements constitute mail or wire fraud but, regardless, these conclusory allegations are not entitled to the presumption of truth.  See, e.g., Starr, 592 F.3d at 321.

various New York State judges and others. (Id. ¶¶ 14, 130(A)-(F).) Because Nichols is currently defending a motion to dismiss her complaint, plaintiffs allege that this "mail and wire fraud is ongoing." (Id. ¶ 130(G).)

Moreover, plaintiffs allege that "[u]pon information and belief, Bushman has counseled and guided Nichols through her false and extreme accusations of wrong-doing" against the Curtis Law Firm. (Id. ¶ 127.) Plaintiffs conclusorily maintain that the "contents" of the various letters and pleadings mailed and faxed by Nichols "disclose[] a participation and association [on the part of Nichols] with the Bushman Law Office in the fraudulent schemes devised by Bushman." (Id. ¶¶ 127, 130.)

**E. The "Corruption" of Various Non-Parties**

Plaintiffs also allege that three other non-parties were "corrupted" by Bushman and stopped paying for legal fees owed to the Curtis Law Firm. (See id. ¶¶ 17-19.)

First, Fred Lorentzen ("Lorentzen"), a former Curtis Law Firm client who had signed an hourly retainer, stopped paying the Curtis Law Firm for his legal services in 1996 when he owed it $50,000. (Id. ¶ 20.) Bushman then commenced an action on behalf of Lorentzen against Curtis and others ("Lorentzen action"). (Id. ¶ 22.) The Curtis Law Firm's insurance carrier paid more than $300,000 in defense costs prior to the settlement of the Lorentzen action, purportedly for a

$25,000 payment to Lorentzen by Bushman's carrier.  (Id. ¶¶ 26-27.)

Similarly, Katheryn Boone ("Boone") retained the Curtis Law Firm under an hourly retainer agreement to represent her in a malpractice action against her former matrimonial attorney.  (Id. ¶¶ 30-31.)  In 2004, Boone stopped paying the Curtis Law Firm for legal services when she owed approximately $25,000 in fees.  (Id. ¶ 31.)  After the Curtis Law Firm was granted leave to withdraw, Bushman became Boone's attorney and continues to represent her in her matrimonial action.  (Id. ¶ 32.)  According to plaintiffs, Bushman has "indicated" that if the Curtis Law Firm seeks to collect the fees allegedly owed by Boone, Boone will counterclaim with a malpractice action against the Curtis Law Firm.  (Id. ¶ 33.)  The Curtis Law Firm has notified its malpractice insurer of this potential claim.  (Id. ¶ 34.)

Finally, Edward King ("King") retained the Curtis Law Firm in 1997 under an hourly retainer agreement to represent him in a malpractice action against his former entertainment attorney.  (Id. ¶¶ 35-39.)  King stopped paying the Curtis Law Firm for legal services in 2005 when he owed it approximately $80,000 in fees.  (Id. ¶ 39.)  Bushman allegedly appeared "informally" as a legal malpractice attorney on behalf of King at a quantum meruit hearing regarding King's allegedly owed

fees.  (Id. ¶ 40.)  During that hearing, Bushman "guided King

through articulating false claims of malpractice on the record"

and "counsel[ed]" King on how to testify "untruthfully."  (Id. ¶

40.)  The court ultimately reduced the amount of fees King owed

to the Curtis Law Firm but found that King had not terminated

the Curtis Law Firm "for cause."  (Id. ¶ 41, Ex. 3.)  The Curtis

Law Firm notified its insurance carrier of a potential

malpractice action involving King.  (Id. ¶ 42.)

**F. The Schemes to Defraud Plaintiffs**

        Broadly, and as summarized in a section of the

Complaint entitled "Summary of the Repeated Corruption of the

Corruptible," plaintiffs allege that Bushman enlisted two other

lawyers, co-defendants Levitt and Levy, and they together

"corrupt[ed]" six or  seven "corruptable" [sic] former Curtis

Law Firm clients to engage in "several fraudulent,

interconnected schemes" to defraud plaintiffs.  (Id. at 33, id.

¶¶ 141, 146.)  Allegedly in violation of RICO, defendants used

mail and wire transmittals to complete these schemes of: (i)

disputing the Curtis' Law Firm's "right" to legal fees from its

former clients based on "phony" malpractice claims; (ii)

prosecuting "knowingly false legal malpractice claims [against

the Curtis Law Firm] with suborned perjury and deceit of

courts;" (iii) "providing legal advice [to clients] on how to

protect and convey assets so that any judgment eventually

obtained by the Curtis Law Firm" would be uncollectible; and (iv) "delaying and hindering" the Curtis Law Firm, a "future creditor," from obtaining judgments against its former clients because of "frivolous litigation." (Id. ¶ 142.)

In simpler terms, plaintiffs allege that defendants, who are former Curtis Law Firm clients, together with their new counsel, have committed mail and wire fraud through "frivolous litigation" by defending against the fee claims initiated by plaintiffs themselves, and by counter-claiming or separately bringing "phony" malpractice claims against plaintiffs in the course of such defenses. (See id. ¶¶ 142-143.) Because plaintiffs allege that they will ultimately prevail in the underlying state court fee claims, plaintiffs allege that they are "future creditors" of defendants who have been "delayed and hindered" by defendants' "frivolous litigation" and "fraudulent conveyance" of assets. (Id.)

Plaintiffs further allege that the "fraudulent and frivolous law suits" commenced and defended by the Bushman defendants and now continued by the Levitt and Levy defendants on behalf of the "corruptible" former clients of the Curtis Law Firm have created a claims history for the Curtis Law Firm which prevents it from obtaining malpractice insurance. (Id. ¶¶ 133-138.) Without malpractice insurance, plaintiffs allege that the

Curtis Law Firm "was required to stop accepting new clients" and is currently "going out of business." (Id. ¶ 136.)

The Curtis Law Firm has been damaged by the lost income from the "earned fees" disputed by defendants, which has required it to go into debt in order to support the continued operations of its existing case load. (Id. ¶ 137.) Additionally, the Curtis Law Firm has been damaged by the need to divert resources away from billable work and toward the non-billable work of defending the fee disputes, malpractice claims, and fraudulent conveyances by the three former clients DeGregorio, Turansky, and Nichols, with the assistance of, variously, the Bushman defendants, Levitt defendants, and Levy defendants. (Id. ¶¶ 138-139.)

## DISCUSSION

### I. Motions to Dismiss

The Bushman defendants,[12] the Levitt defendants,[13] the Levy defendants,[14] defendant DeGregorio,[15] defendant Turansky,[16] and

---

[12] The parties have submitted the following motion papers in connection with the Bushman defendants' motion to dismiss: ECF No. 84, Memorandum of Law in Support of the Bushman Defendants' Motion to Dismiss ("Bushman Mem."); ECF Nos. 83, 107, 109, and 111, Affidavit of Michael J. Cannon in Support of the Bushman Defendants' Motion to Dismiss ("Cannon Aff."); ECF No. 86, Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss by the Bushman Defendants ("Pl. Bushman Mem."); ECF No. 87, Reply Memorandum of Law in Support of the Bushman Defendants' Motion to Dismiss ("Bushman Reply Mem.").

[13] The parties have submitted the following motion papers in connection with the Levitt defendants' motion to dismiss: ECF No. 75, Affidavit ("Levitt Aff. #1") and Memorandum of Law in Support of Jeffrey Levitt's Motion to

defendant Nichols[17] each move separately to dismiss the complaint

on a variety of grounds, and plaintiffs oppose.[18]

Dismiss ("Levitt Mem."); ECF No. 77, Supplemental Memorandum in Support of Jeffrey Levitt's Motion to Dismiss ("Levitt Supp. Mem."); ECF No. 79, Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss by Jeffrey Levitt ("Pl. Levitt Mem."); ECF No. 80, Reply Memorandum of Law in Support of Levitt Motion to Dismiss ("Levitt Reply Mem.").

[14]   The parties have submitted the following motion papers in connection with the Levy defendants' motion to dismiss: ECF No. 89, Memorandum of Law in Support of Levy Defendants' Motion to Dismiss ("Levy Mem."); ECF No. 132, Affidavit in Support of the Levy Defendants' Motions to Dismiss ("Levy Aff. #1"); ECF No. 102, Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss by Levy Defendants ("Pl. Levy Mem."); ECF No. 135, Reply Affidavit in Support of Levy and DeGregorio's Motions to Dismiss ("Levy Aff. #2"); ECF No. 103, Reply Memorandum of Law in Support of Levy Defendants' Motion to Dismiss ("Levy Reply Mem.").

[15]   The parties have submitted the following motion papers in connection with DeGregorio's motion to dismiss: ECF No. 131, Affidavit in Support of Eileen DeGregorio's Motion to Dismiss ("DeGregorio Aff."); ECF No. 133, Memorandum of Law in Support of Eileen DeGregorio's Motion to Dismiss ("DeGregorio Mem."); ECF No. 138, Plaintiffs' Memorandum in Opposition to Motion to Dismiss by Eileen DeGregorio; ECF No. 136, Reply Memorandum in Support of Eileen DeGregorio's Motion to Dismiss ("DeGregorio Reply Mem."); ECF No. 135, Reply Affidavit in Support of Levy and DeGregorio's Motions to Dismiss ("Levy Aff. #2").

[16]   The parties have submitted the following motion papers in connection with Turansky's motion to dismiss: ECF No. 76, Affidavit ("Levitt Aff. #2") and Memorandum of Law in Support of Janet Turansky's Motion to Dismiss ("Turansky Mem."); ECF No. 78, Plaintiffs' Memorandum in Opposition to Motion to Dismiss by Janet Turansky Callaghan ("Pl. Turansky Mem."); ECF No. 81, Reply Memorandum in Support of Janet Turansky's Motion to Dismiss ("Turansky Reply Mem.").

[17]   The parties have submitted the following motion papers in connection with Nichols' motion to dismiss: ECF No. 143-5, Memorandum of Law in Support of Stevi Brooks Nichols' Motion to Dismiss ("Nichols Mem."); ECF No. 143-4, 7, 8, 9, 10, 11, 12, Affidavit in Support of Motion to Dismiss ("Nichols Aff."); ECF No. 143-14, Plaintiffs' Memorandum in Opposition to Motion to Dismiss by Stevi Brooks Nichols ("Pl. Nichols Mem."); ECF No. 143-4, Reply Memorandum of Law in Further Support of Stevi Brooks Nichols' Motion to Dismiss ("Nichols Reply Mem.").

[18]   Submissions relating to each group of defendants have been cited in turn.  However, plaintiffs have additionally submitted the following motion papers in opposition to all defendants' motions to dismiss: ECF Nos. 88, 90, 92, 93, 94, 95, and 96, Declaration of W. Robert Curtis in Opposition to All Defendants' Motions to Dismiss ("Curtis Decl. #1"); ECF No. 97, Plaintiffs' Rule 8(a)(2) Declaration of Plaintiff W. Robert Curtis in Opposition to Defendants' Motions to Dismiss ("Curtis Decl. #2"); ECF Nos. 99 and 101, Supplemental Declaration of W. Robert Curtis in Opposition to Defendants' Motions to Dismiss ("Curtis Decl. #3").

## A. Legal Standard

Rule 12(b)(6) provides for the dismissal of a complaint containing allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing plausibility on a Rule 12(b)(6) motion to dismiss, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 129 S. Ct. at 1950, and afford the plaintiff every reasonable inference, see Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50.

The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This does not require a showing of a "probability" of misconduct, but it does demand more than "a sheer possibility that a defendant has acted

unlawfully." See id. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1950); see also Twombly, 550 U.S. at 570 (where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). Indeed, when "however true," the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." See Twombly, 550 U.S. at 558.

Although civil RICO actions generally need not do more than meet the routine pleading requirements outlined above, courts are particularly mindful of these standards in the context of a civil RICO claim, the assertion of which often has "an almost inevitable stigmatizing effect on those named as defendants." World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 495-96 (S.D.N.Y. 2007) (internal quotation and citation omitted); see also Nichols v. Mahoney, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009)("A civil RICO lawsuit has vast implications for the defendants because of the specter of treble damages and the possibility of permanent reputational injury to defendants from the allegation that they are 'racketeers.'"). Because of this likely powerful effect on potentially innocent

defendants who face the threat of treble damages, and the concomitant potential for abuse of RICO's potent provisions, the court is aware of a particular imperative in cases such as the one at bar, "to flush out frivolous [civil] RICO allegations at an early stage of the litigation." World Wrestling Entm't, 530 F. Supp. 2d at 496 (internal quotation and citation omitted).

Moreover, where, as here, a plaintiff alleges RICO predicate acts based upon fraudulent activities such as mail or wire fraud, a plaintiff must additionally satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). See City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 446 (2d Cir. 2008), rev'd on other grounds sub nom. Hemi Group, LLC v. City of New York, 130 S. Ct. 983 (2010) ("Allegations of mail or wire fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)." (citation omitted)). The court will thus examine below the mail and wire fraud allegations in the context of Rule 9(b)'s particularity requirements.

## B. Application to Federal RICO Claims

The RICO statute, 18 U.S.C. Section 1964(c), provides a private right of action to any person injured in its business or property by reason of a violation of Section 1962. See 18 U.S.C. §§ 1961-1968. RICO generally provides for harsh criminal and civil penalties and in the context of a private RICO action,

any defendant found liable under Section 1964(c) faces the "drastic" penalties of "treble damages, costs and attorneys fees." <u>See</u> <u>H.J., Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 233 (1989) (citing 18 U.S. C. §§ 1963 and 1964(c)).

In order to recover under Section 1964(c), a private plaintiff must plead "(1) the defendant's violation of [18 U.S.C] § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 283 (2d Cir. 2006) (quoting <u>Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.</u>, 271 F.3d 374, 380 (2d Cir. 2001)). A showing under the first element, the defendant's violation of 18 U.S.C. § 1962, may be made in any one of four ways. Specifically, "any person" may be liable for violating 18 U.S.C. § 1962 who: (i) uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); (ii) "acquire[s] or maintain[s], directly or indirectly, any interest in or control of" such an enterprise "through a pattern of racketeering activity," § 1962(b); (iii) by being "employed by or associated with" such an enterprise, "conduct[s] or participate[s], directly or directly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," § 1962(c);

or (iv) conspires to violate the substantive provisions of §
1962 (a), (b), or (c), § 1962(d).  See H.J., 492 U.S. at 232-33.

Significantly, in order to adequately allege a
violation of any one of the substantive provisions of the RICO
Act, 18 U.S.C. § 1962(a)-(c), a plaintiff must plead a "pattern
of racketeering activity."  See 18 U.S.C. § 1962(a)-(c).
Further, an underlying substantive violation must be shown in
order to establish a conspiracy under 18 U.S.C. § 1962(d).  See
id. § 1962(d).  "Thus, under any prong of § 1962, a plaintiff in
a civil RICO suit must establish a 'pattern of racketeering
activity.'"  Spool v. World Child Int'l Adoption Agency, 520
F.3d 178, 183 (2d Cir. 2008) (internal citation and quotation
omitted) ("To establish a substantive RICO violation, a
plaintiff must show a 'pattern of racketeering activity,' 18
U.S.C. § 1962(a)-(c), and to establish a RICO conspiracy, a
plaintiff must show a conspiracy to commit a substantive RICO
violation, id. § 1962(d).").  Further, in order to survive a
motion to dismiss, such "pattern of racketeering activity" must
be "adequately alleged in the complaint."  Id.

### 1. Each Substantive RICO Claim Fails Because Plaintiffs Fail to Plead Any Predicate Acts and Fail to Plead Fraud With Particularity

Here, plaintiffs have alleged in Counts One through
Five of the Complaint that defendants committed substantive RICO
violations in violation of 18 U.S.C. Section 1962 (a), (b), and

(c).  However, because plaintiffs have failed as a matter of law
to plead any underlying predicate acts which could form the
basis for a "pattern of racketeering activity," the substantive
RICO violations alleged in Counts One through Five cannot
survive defendants' motions to dismiss.  Moreover, the claims
must fail because they fail to meet the heightened pleading
requirements for fraud under Rule 9(b).

### a) Failure to Plead Predicate Acts as a Matter of Law

First, plaintiffs' RICO claims fail as a matter of law
because the claims fail to plead any RICO predicate acts.  The
RICO statutory scheme defines "racketeering activity" to include
"a host of criminal offenses, which are in turn defined by
federal and state law."  Cofacredit, S.A. v. Windsor Plumbing
Supply Co. Inc., 187 F.3d 229, 242 (2d Cir. 1999) (citing 18
U.S.C. § 1961(1)).  Specifically, the RICO statute defines
"racketeering activity" as including any "act" indictable under
various specified federal statutes, including the mail and wire
fraud statutes.  See 18 U.S.C. § 1961(1) (defining "racketeering
activity" to include offenses indictable under 18 U.S.C. §§ 1341
(relating to mail fraud) and 1343 (relating to wire fraud)); see
also Smokes-Spirits.Com, 541 F.3d at 434 n.9 ("Mail fraud and
wire fraud are forms of 'racketeering activity' for purposes of
RICO.") (citation omitted).  "Pattern" is defined by the statute

as "at least two acts of racketeering activity" within a ten-year period.  18 U.S.C. § 1961(5).

To state a claim for mail and wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." Chanayil v. Gulati, 169 F.3d 168, 170-71 (2d Cir. 1999).  To prove mail or wire fraud, the plaintiff need not show that a defendant personally mailed or wired anything themselves, but that they "caused it to be done." Smokes-Spirits.com, 541 F.3d at 446 (citation omitted). The "gravamen" of the mail fraud offense is the "scheme to defraud," and "any mailing that is incident to an essential part of the scheme satisfies the mailing element . . . even if the mailing itself contains no false information." Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 647 (2008) (internal quotations and citations omitted).

In the Complaint, plaintiffs purport to allege various predicate acts of mail and wire fraud allegedly committed by defendants in the course of "defend[ing] fee claims" and "commenc[ing] and litigat[ing] six phony lawsuits."  (Compl. ¶

1.) Specifically, plaintiffs allege that various defendants committed mail and wire fraud predicate acts[19] by:

- Mailing a Reply to Counterclaims, Plaintiff's First Notice for Discovery, Plaintiff's Cross-Notice to Take Deposition, and Verified Bill of Particulars, to attorney Douglas Capuder ("Capuder") on February 9, February 9, February 9, and February 22, 2007, respectively, (Compl. ¶ 58(A-D));

- Mailing letter regarding subpoena to Capuder and DeGregorio on June 14, 2007, (Compl. ¶ 58(E));

- Mailing Bushman's Affirmation in Opposition to Motion to Disqualify to a party unspecified in the Complaint dated March 17, 2007, (Compl. ¶ 60(A));

- Mailing letter regarding adjourning motion filing deadlines to Bushman and Capuder on January 10, 2008, (Compl. ¶ 64(A));

- Mailing Affirmation in Opposition to Cross-Motion, Cover letter for Respondent's Post-Trial Brief, Cover letter for Respondent's Proposed Counter-Judgment and Affirmation in Support from Bushman to Curtis Law Firm, DeGregorio and the Court on March 28, 2005, September 15, 2006, and October 13, 2006, respectively, (Compl. ¶ 68(A), 72(A-B));

- Mailing letter regarding a 90-day extension of time from Bushman to the Court, DeGregorio, and the Curtis Law Firm dated October 21, 2005, (Compl. ¶ 78(A));

---

[19] From the comprehensive list of the Complaint's alleged predicate acts enumerated here, the court omits two apparent allegations of defamation. First, plaintiffs allege conclusorily that "numerous confusing and misleading statements" by Levitt during oral argument on January 26, 2009 constitute "predicate acts of mail fraud and wire fraud." (Compl. ¶ 124(B).) Second, plaintiffs allege conclusorily that defendants "falsely disparage[ed] the Curtis Law Firm by misrepresenting its litigation history to . . . clients . . . ." (Id. ¶ 143(B); see also id. ¶ 1(B).) It is unclear how plaintiffs seek to characterize these isolated oral statements as mail and wire fraud involving use of the mails and wires. Regardless, because these claims apparently attempt to allege defamation rather than mail or wire fraud, and because it is well-established that defamation does not meet the definition of a RICO predicate act, the court notes its disregard of these conclusory and apparently superfluous allegations. See, e.g., Kimm v. Chang Hoon Lee, No. 04-cv-5724 (HB) 2005 U.S. Dist. LEXIS 727 at *16-17 (S.D.N.Y. Jan. 13, 2005) (collecting cases finding that defamation cannot be a RICO predicate act).

- Mailing letter regarding service via fax from Bushman to the Curtis Law Firm dated November 9, 2006, (Compl. ¶ 78(B));

- Mailing letter regarding the sale of DeGregorio's home in order to have "adequate funds with which to pay any judgment" to the Curtis Law Firm and DeGregorio dated December 29, 2006, (Compl. ¶ 78(C));

- Mailing letter submitting replacement Appellant's brief to the Court dated May 31, 2007, (Compl. ¶ 81(A));

- Mailing letter to Court regarding an agreement reached between counsel in connection with the contents of the court record to the Court dated July 26, 2007, (Compl. ¶ 81(B));

- Mailing letter regarding an adjournment of deadlines to the Appellate Division dated September 11, 2007, (Compl. ¶ 81(C));

- Mailing Notice of Settlement, Notice of Entry, and Answering Affirmation of Levy from Levy to the Court, Bushman, the Curtis Law Firm, and DeGregorio on July 8, August 5, and October 14, 2008, respectively, (Compl. ¶ 88(A-C));

- Mailing Order to Show Cause with Affirmation from Levy to the Court, Bushman, and DeGregorio on or about October 2, 2008 and October 10, 2008, (Compl. ¶ 88(D));

- Mailing Affirmation in Opposition to Motion to Dismiss, second Affirmation in Opposition to Motion to Dismiss, Verified Bill of Particulars, Supplemental Verified Bill of Particulars, Affirmation in Opposition to Motion for Summary Judgment, and Affirmation in Opposition to total Disqualification, from Bushman to Capuder, the Court, and Turansky and dated February 17, March 24, July 26, and October 4, 2005, and February 7, and 13, 2006, respectively, (Compl. ¶ 113(A-F));

- Mailing letter from Turansky to the Court and Capuder and Bushman dated February 26, 2007, (Compl. ¶ 115(B));

- Mailing Notice of Motion and request for jury trial and Omnibus Notice of Motion containing an Amended Reply to

Counterclaims and an affidavit by Turansky from Levitt to either the Court and/or the Curtis Law Firm dated June 14, 2008 and February 22, 2009, respectively, (Compl. ¶ 124(A, C-E)); and

- Mailing letters in February 2009 and a verified complaint dated January 8, 2009 from Nichols to various judges in the New York County Supreme Court, (see Compl. ¶¶ 130 (A-F)).

Plaintiffs themselves succinctly and accurately summarize these alleged predicate acts as consisting of "litigation activities." (See, e.g., id. ¶¶ 58, 60, 68, 72, 88, 113.) Plaintiffs further characterize these "litigation activities" as "multiple instances of mail fraud in violation of 18 U.S.C. § 1341." (Id. ¶¶ 156, 166, 172, 178, 184, 192, 202, 208, 214, 219.) Additionally, plaintiffs portray the alleged "numerous" phone calls from Turansky in Connecticut to Bushman in New York (id. ¶¶ 113(H), 115(A)) and Nichols' use of wire transmissions to fax copies of letters to various New York State Court judges and other counsel (id. ¶ 130 (A-F)) as "multiple instances of wire fraud in violation of 18 U.S.C. § 1343" (id. ¶¶ 156, 166, 172, 178, 184, 192, 202, 208, 214, 219). These allegations fail to state a claim upon which relief may be granted for several reasons.

Even a cursory review of the predicate acts alleged in the Complaint reveals that plaintiffs' summary of these actions

as "litigation activities" is apt.[20]  (See, e.g., Compl. ¶¶ 58,

60, 68, 72, 88, 113.)  Thus, the predicate acts alleged in the

Complaint all involve the mailing of litigation documents such

as pleadings (for example, a Reply to Counterclaims (id. ¶

58(A)), discovery notices (for example, Plaintiff's First Notice

for Discovery (id. ¶ 58(B)), requests for adjournments (for

example, a letter regarding an adjournment dated January 10,

2008 (id. ¶ 64(A)), and other ministerial documents (for

example, letters regarding service via fax or submitting a

replacement copy of a brief (id. ¶¶ 78(B), 81(A)).  Indeed, as

the Bushman defendants correctly point out, each and every

mailing specified in the Complaint "involves the service,

filing, or exchange of documents related to a pending legal

action."  (Bushman Mem. at 11.)  The same appears to be true

regarding the alleged wire fraud.

        This understanding – that the alleged RICO predicate

acts are no more than "litigation activities" alone – brings

---

[20]     Plaintiffs fail in their conclusory attempt to recast certain letters
as nefariously connected to an alleged scheme to fraudulently convey
DeGregorio's Westhampton home and thereby defraud the Curtis Law Firm.
Rather, plaintiffs' conclusory allegations notwithstanding, on their face the
letters identified by plaintiffs as intended to "delay, hinder, and defraud"
the Curtis Law Firm are no more than additional standard litigation-related
letters.  (See Compl. ¶ 78(A) (letter dated October 21, 2005 regarding a 90-
day extension of time in the quantum meruit hearing); ¶ 78(B) (letter dated
November 9, 2006 regarding service via fax); and (78(C) (letter dated
December 29, 2006 noting that the sale of DeGregorio's home was accomplished
in order to have "adequate funds with which to pay any judgment").)
Plaintiffs' other allegations regarding allegedly fraudulent conveyances are
merely conclusory and not entitled to the presumption of truth.  (See, e.g.,
id. ¶¶ 138, 143(E), 157, 193.)

into focus plaintiffs' rather striking theory of the case.

Plaintiffs essentially allege that any client with the impudence
to contest the Curtis Law Firm's legal fees, and further, to
litigate in court that client's obligation to pay those fees or
challenge through a malpractice action the professional conduct
of the Curtis Law Firm, and any attorney who represents such a
client, is a racketeer and liable for treble damages. The
gravamen of the Complaint is thus that defendants' have violated
RICO by defending against plaintiffs' fee claims or initiating
malpractice actions against plaintiffs and thereby forcing
plaintiffs to litigate allegedly "phony" and "frivolous"
lawsuits in state court. This theory cannot withstand a motion
to dismiss because it fails to state a claim upon which relief
may be granted.

First, persuasive authority in this and other
jurisdictions suggests that the litigation activities alleged in
this Complaint cannot properly form the basis for RICO predicate
acts. See, e.g., Gunn v. Palmieri, No. 87-cv-1418, 1989 WL
119519, at *1 (E.D.N.Y. Sept. 29, 1989), aff'd, 904 F.2d 33 (2d
Cir. 1990), cert. denied, 498 U.S. 1049 (1991) (rejecting
"untenable" interpretation of RICO which would permit litigation
activities to be construed as RICO predicate acts). Thus, on
similar facts, a number of courts have found that allegations
such as those here more properly may be classified as claims

sounding in abuse of process[21] or malicious prosecution.[22] <u>See,</u>
<u>e.g.</u>, <u>Daddona v. Gaudio</u>, 156 F. Supp. 2d 153, 162 (D. Conn.
2000) (finding allegations "at best amount to vague abuse of
process or malicious prosecution claims" where complaint lists
"a variety of 'predicate acts,' all of which involve the filing
of complaints and other legal documents"); <u>Nakahara v. Bal</u>, No.
97-cv-2027, 1998 U.S. Dist. LEXIS 825, at *20-21, *27 (S.D.N.Y.
Jan. 30, 1998) (finding that plaintiffs' mail and wire fraud
claims are at most "a potential yet still inchoate claim for
malicious prosecution or abuse of process" where "the gravamen
of [plaintiffs'] Complaint . . . is patently directed at [the
defendant's] filing of, or participation in, the various legal
actions pending against [plaintiffs]"); <u>Von Bulow v. Von Bulow</u>,
657 F. Supp. 1134, 1140-42 (S.D.N.Y. 1987) (finding that the
"essence of the stated [fraud] claim" sounds in malicious

---

[21]     In New York, "a malicious abuse of process claim lies against a
defendant who (1) employs regularly issued legal process to compel
performance or forbearance of some act (2) with intent to do harm without
excuse or justification, and (3) in order to obtain a collateral objective
that is outside the legitimate ends of the process." <u>Shain v. Ellison</u>, 273
F.3d 56, 68 (2d Cir. 2001) (quoting <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir.
1994)).

[22]     "In order to prevail in an action for malicious prosecution in New
York, a plaintiff must show: (1) the initiation of an action by the defendant
against [him], (2) begun with malice, (3) without probable cause to believe
it can succeed, (4) that ends in failure or, in other words, terminates in
favor of the plaintiff.  In addition, if the proceeding of which plaintiff
complains was a civil action, the plaintiff must prove special injury — some
interference with [the] plaintiff's person or property . . . beyond the
ordinary burden of defending a lawsuit." <u>Engel v. CBS, Inc.</u>, 145 F.3d 499,
502 (2d Cir. 1998) (internal quotations and citations omitted).

33

prosecution where plaintiffs' allegations "closely parallel[ed] the elements of malicious prosecution claim).

Similarly, here, although plaintiffs have styled their allegations as mail and wire fraud, plaintiffs' allegations in fact focus entirely upon the "litigation activities" involved in defendants' allegedly "phony" and "frivolous" litigation with plaintiffs. Plaintiffs' allegations thus loosely track the elements for a malicious prosecution claim in that (1), plaintiffs allege an action against plaintiffs, (plaintiffs allege defendants' commencement of various malpractice actions (id. ¶ 1(C)), (2) begun with malice (plaintiffs allege prosecution of such actions by "acts of champerty," "corruption" and "deceitful" schemes employing "suborned perjury and deceit of the court" (id. ¶ 141-142)), and (3) without probable cause (plaintiffs allege defendants' prosecution of "knowingly false legal malpractice claims" and challenge of "the right to earned legal fees" (id. ¶ 142)). See Engel, 145 F.3d at 502.

However, plaintiffs fail to allege that the state court litigation underlying their allegations has terminated in plaintiffs' favor, or even terminated at all, a required element of any malicious prosecution claim. See id. Indeed, to the contrary, plaintiffs affirmatively allege that the fee disputes are ongoing. (See Compl. ¶¶ 88(E), 124(F), and 130(G).) Further, plaintiffs fail to allege any special injury. See

34

<u>Engel</u>, 145 F.3d at 502.  Thus, despite plaintiffs' creative attempts to plead mail and wire fraud, the court finds that plaintiffs' incomplete allegations at best attempt to make out a malicious prosecution claim.[23]

Without more, such allegations that the state court litigation is frivolous, fraudulent, or baseless- essentially claims of malicious prosecution – without more, cannot constitute a viable RICO predicate act.  <u>See, e.g.</u>, <u>Daddona</u>, 156 F. Supp. 2d at 162 ("Attempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been scrutinized by the courts, and have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation."); <u>see also</u> <u>Park South Assocs. v. Fischbein</u>, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), <u>aff'd</u>, 800 F.2d 1128 (2d Cir. 1986) (rejecting plaintiffs' RICO claims on various grounds including that plaintiff "has not pled" a RICO predicate act

---

[23]     Alternatively, and even more obviously beyond the scope of RICO, plaintiffs' claims may be construed as an attempt to re-litigate in federal court the still-pending fee claims plaintiffs have lodged in state court. (<u>See, e.g.</u>, Compl. ¶¶ 12, 13, 14 (alleging amounts of unpaid fees allegedly owed to the Curtis Law Firm by Turansky, DeGregorio, and Nichols, respectively); <u>see also</u> Pl. Bushman Mem. at 24, n.14.)  For example, according to plaintiffs' own allegations, the state court ruled against the Curtis Law Firm in its Turansky fee claim. (<u>See</u> Compl. 116.)  Nonetheless, and although the Turansky fee claim is still pending in the State court (<u>id.</u> ¶ 124(F)), plaintiffs here claim that the hearing officer's determination relied on "false testimony" and essentially seek to rehash and review the merits of that fee claim under the guise of RICO.

although "[p]laintiffs' allegations may make out a state court action for abuse of process").

Further, and even more compelling than the persuasive authority discussed above, plaintiffs' claims must be rejected because finding otherwise – and allowing malicious prosecution claims such as those attempted to be alleged here to suffice as RICO predicate acts – would lead to absurd results.  First, if routine litigation activities such as defending against a fee claim or prosecuting a malpractice action against a former attorney is a violation of RICO, then almost every state or federal action could lead to corollary federal RICO actions. See Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) ("Garden-variety pleading errors and the filing of routine motions do not constitute RICO predicate acts.  To hold otherwise would turn every state court lawsuit into a predicate for a subsequent federal RICO action.").  Plaintiffs' interpretation of RICO is untenable and would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations.  See, e.g., Gunn, 1989 WL 119519, at *1 ("If serving and filing an answer or a motion by any defendant . . . could be considered . . . [a RICO predicate act], this Court would be flooded with motions to amend

complaints by plaintiffs seeking to add RICO claims based upon mail fraud and obstruction of justice as soon as an answer was served. Such an interpretation of the RICO statute is untenable."); see also Morin v. Trupin, 711 F. Supp. 97, 106 (S.D.N.Y. 1989) ("The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud. If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation. Such activity is simply not fraudulent.") (quoting Paul S. Mullin & Assocs., Inc. v. Bassett, 632 F. Supp. 532, 540 (D. Del. 1986)). Indeed, as Levitt correctly points out, were this court to permit plaintiffs' Complaint in this action to move forward, defendants could conceivably countersue plaintiffs for RICO conspiracy violations based upon the many allegations and statements by plaintiffs in this action which defendants might similarly contend are frivolous or false. (See Levitt Mem. at 6.)

Additionally, this absurd result would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts. See Engel, 182 F.3d at 129 (noting generally "strong public policy of open access to the courts for all parties and [need] to avoid ad infinitum [litigation] with each party claiming that the

opponent's previous action was malicious and meritless")
(internal quotation and citation omitted).  If any litigant's or
attorney's pleading and correspondence in an unsuccessful
lawsuit could lead to drastic RICO liability in a private right
of action, litigants might hesitate to avail themselves of the
courts and available legal remedies or be unable to find
representation to help vindicate their rights.  See Morin, 711
F. Supp. at 105 ("Congress could not have intended that the mail
and wire fraud statute sweep up correspondence between
attorneys, dealing at arm's length on behalf of their parties,
concerning an issue in pending litigation . . . .  Subjecting
[such] letter[s] . . . to the mail fraud statute would chill an
attorney's efforts and duty to represent his or her client in
the course of pending litigation.") (internal quotation and
citation omitted).

Moreover, allowing the federal RICO statute to usurp
underlying legitimate state court litigation as proposed by
plaintiffs here would inappropriately bypass the state tribunal
where the action is pending and which properly controls that
proceeding.  Should plaintiffs' vague allegations of "phony" and
"frivolous" litigation, "suborned perjury" and "deceit of court"
have merit, plaintiffs' should direct such claims to the state
courts where these acts are allegedly occurring and where the
underlying litigation is still pending.  This court flatly

38

rejects plaintiffs' contention that "there is . . . no remedy to be found in state courts merely by suing Bushman based on only one, or even several, of the seven underlying cases . . . ." (Pl. Bushman Mem. at 28 n.23.) Rather, this court has full confidence that the New York State courts where the underlying litigation is currently pending are fully competent to address any such wrongs and this court is unconvinced that such issues should be re-litigated in federal court under the guise of a RICO action. See, e.g., Daddona 156 F. Supp. 2d at 162 ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.") (citation omitted); see also Nakahara, 1998 U.S. Dist. LEXIS 825, at *31 ("The claims of 'fraud' advanced here can be asserted as effectively, if not more so, in each of [the] ongoing [underlying] proceedings. Indeed, this RICO action adds nothing except the in terrorem effect of a treble damage claim and the expense of conducting litigation over these same issues in yet another forum.").

Finally, the Congressional intent in enacting RICO does not square with the absurd consequences and contraventions of well-settled public policy which would inevitably result from allowing RICO predicate acts to be based upon the type of malicious prosecution claims alleged here. Certainly, "RICO is to be read broadly." Sedima, S.P.R.L. v. Imrex Co., 473 U.S.

479, 497-98 (1985) (noting that "the lesson" of RICO's broad
interpretation is evident "not only [from] . . . Congress' self-
consciously expansive language and overall approach, but also .
. . [from] its express admonition that RICO is to 'be liberally
construed to effectuate its remedial purposes'") (internal
citation omitted).  However, there can be no dispute that
"Congress did not intend to effect a wholesale preemption of
state civil law in its enactment of RICO."  Von Bulow, 657 F.
Supp. at 1143.  Permitting the "litigation activities" alleged
here to serve as RICO predicate acts would lead to just such an
absurd result, in contravention of RICO's admittedly broad
remedial purpose.  See United States v. Eisen, 974 F.2d 246, 254
(2d Cir. 1992) (noting the "understandable reluctance" on the
part of Congress "to use federal criminal law as a back-stop for
all state court litigation").

     For all of these reasons, this court joins a long line
of cases in finding, as a matter of law, that the "litigation
activities" pleaded in the Complaint cannot constitute predicate
acts for the purposes of RICO.  See, e.g., Directv, Inc. v.
Lewis, No. 03-cv-6241, 2005 U.S. Dist. LEXIS 8187, at *22
(W.D.N.Y. Apr. 29, 2005) ("courts have held that serving
litigation documents by mail cannot be a predicate act to
establish mail fraud under the RICO statute"); Kashelkar, 97 F.
Supp. 2d at 393 ("soundly" rejecting "contention that"

"legitimate conduct of attorneys representing their clients in pending litigation" can "constitute mail or wire fraud"); Daddona, 156 F. Supp. 2d at 162 ("Courts have found that allegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation."); Nakahara, 1998 U.S. Dist. LEXIS 825, at *24 n.7 ("The core conclusion . . . that the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO has been reached by numerous courts . . . in this jurisdiction and others.") (collecting cases); Sundwall v. Weinstein & Assocs., No. 3:97-cv-405, 1997 U.S. Dist. LEXIS 12702, at *4 (D. Conn. Aug. 19, 1997) (Plaintiff's . . . alleged predicate acts involv[ing] mail fraud and obstruction of justice claims, both arising out of defendants alleged fraudulent activities in representing their clients in Connecticut state and federal courts . . . are insufficient, as a matter of law, to constitute the necessary predicate acts under RICO."); D'Orange v. Feely, 877 F. Supp. 152, 156 (S.D.N.Y. 1995) (attorneys' "legitimate conduct" of mailing letters to opposing counsel "on behalf of a client in the course of pending litigation" cannot constitute predicate acts under RICO).

Plaintiffs' response to the Bushman Memorandum's discussion of these multiple persuasive authorities (see Bushman

Mem. at 10-12) amounts to simply alleging that even legitimate legal documents can amount to mail fraud because to prove mail fraud, a plaintiff need not show that the mailings themselves were fraudulent if the mailings were part of an overall scheme to defraud. (See Pl. Bushman Mem. at 23-31.) Certainly, this is a correct statement of the law. See, e.g., Bridge, 553 U.S. at 647 (noting that any mailing that is incident to an essential part of an overall scheme to defraud "satisfies the mailing element [for mail fraud] . . . even if the mailing itself contains no false information") (internal quotations and citations omitted). However, this argument does nothing to address the weight of authority discussed above. Indeed, notwithstanding plaintiffs' lengthy recitation of the elements and components of the two different alleged schemes to defraud here, plaintiffs' memoranda in opposition to defendants' motions to dismiss fail to discuss a single case contrary to the long line of cases finding that defendants' "litigation activities" alone, cannot, as a matter of law, suffice as predicate acts to support a RICO claim.

Finally, in a footnote to plaintiffs' reply memorandum in support of plaintiffs' motion to again amend the Complaint, plaintiffs seek to respond to this authority by citing to a single Second Circuit case, United States v. Eisen, for the proposition that litigation activities can indeed rise to the

level of RICO predicate acts and constitute a "pattern of
racketeering activity" as required by the RICO statutes.  (See
ECF No. 185, Reply Mem. in Further Support of Pl. Mot. for Leave
to Amend at 5 n.2 (citing Eisen, 974 F.2d 246 (2d Cir. 1992).)
However, Eisen is inapposite here.  First, the holding in Eisen
did not reach the issue here regarding whether litigation
activities alone can suffice as RICO predicate acts of mail and
wire fraud.  Second, the facts of Eisen are plainly
distinguishable from the facts here and therefore provide no
support for plaintiffs' position.

Eisen involved the criminal prosecution of seven
attorneys, investigators, and office personnel of a Manhattan
law firm ("the Eisen Firm") which specialized in bringing
personal injury suits on behalf of plaintiffs.  Eisen, 974 F.2d
at 251.  The evidence at trial in that case showed that the
defendants conducted the affairs of the Eisen Firm through a
"pattern of mail fraud and witness bribery by pursuing
counterfeit claims" by, among other things "pressuring accident
witnesses to testify falsely, paying individuals to testify
falsely . . ., paying unfavorable witnesses not to testify, and
creating false . . . evidence for use before and during trial."
Id.  Thus, in Eisen, the defendant attorneys "went well beyond
their capacities as legal representatives" in conducting their

fraudulent scheme.  See Morrow v. Blessing, No. 04-cv-1161, 2004

U.S. Dist. LEXIS 20318, at *16 (E.D.Pa. Sept. 20, 2004.)

Accordingly, the predicate acts in Eisen amounted to

far more than mere "litigation activities," and instead involved

an extensive and broader scheme to defraud defendants in the

personal injury lawsuits commenced by the Eisen Firm.  See

Nakahara, 1998 U.S. Dist. LEXIS at *30 ("The fraudulent criminal

scheme underlying the predicate mail fraud offenses in Eisen was

entirely external to, and independent of, any of the particular

disputes between the litigants in the civil actions that were

improperly filed and litigated by the Eisen defendants in

execution of their scheme.").  By contrast, here, the allegedly

"frivolous" and "phony" litigation activities themselves and the

merits of the underlying state court lawsuits form the gravamen

of plaintiffs' RICO and state law claims and the framework for

the overall scheme to defraud alleged in the Complaint.  See id.

("[T]he RICO claim in this case . . . seeks to have this Court

in effect decide the merits of lawsuits or proceedings that are

already pending between these same parties in several other

jurisdictions . . . .")  Accordingly, the court finds unavailing

plaintiffs' reliance on Eisen and reaffirms that plaintiffs'

allegations based on defendants' allegedly "frivolous" and

"phony" litigation activities cannot, alone, give rise to viable

predicate acts of mail and wire fraud.  See Von Bulow, 657 F.

Supp. at 1145 (finding that "a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act" but declining to "address the situation where allegedly unjustified suits form a part of some more extensive scheme of racketeering activity, such as extortion").

Plaintiffs' arguments are thus unavailing, and this court finds that as a matter of law, the allegations in the Complaint are insufficient to plead a pattern of racketeering activity, and therefore the substantive RICO claims should be dismissed. See Spool, 520 F.3d at 183 ("[U]nder any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity'" and adequately allege such "pattern of racketeering activity" in the complaint in order to withstand a motion to dismiss).

### b) Failure to Plead Fraud with Particularity

Moreover, even assuming, *arguendo*, that plaintiffs' allegations do not fail to state RICO predicate acts as a matter of law, plaintiffs' RICO claims fail because the allegations of mail and wire fraud do not meet the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that RICO allegations of mail and wire fraud be pleaded with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."); see also Moore v. PaineWebber, Inc., 189 F.3d 165, 172 (2d Cir. 1999) (Rule 9(b) "applies to RICO claims for which fraud is the predicate illegal act").

Typically, to meet the heightened Rule 9(b) pleading standard, where a plaintiff claims that specific communications were themselves fraudulent or misleading the plaintiff must identify the fraudulent communications, their contents, who made the communications, where and when the communications were made, and why the communications were fraudulent. See Moore, 189 F.3d at 173 ("In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. The plaintiffs must also identify the purpose of the mailing within the defendant's fraudulent scheme. In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.") (internal citations omitted). However, in cases where plaintiffs allege that the mails or wires were "simply used in furtherance of a master plan to defraud, the mailings need not contain fraudulent information, and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications is sufficient to satisfy Rule 9(b)." AIU Ins. Co. v. Olmecs Med.

Supply Co., Inc., No. 04-cv-2934, 2005 U.S. Dist. LEXIS 29666, at *33 (E.D.N.Y. Feb. 22, 2005) (citing In re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998)); see also Schmuck v. United States, 489 U.S. 705, 712-15 (1989) (holding that a "scheme to defraud" may be established even where a defendant's mailings or wires do not contain false or misleading statements so long as the mailing is "incident to an essential part" of the underlying scheme which itself has a fraudulent, deceptive purpose) (internal citations omitted).  In such cases, particularity as to the mailings themselves is unnecessary, but rather Rule 9(b) requires "adequate particularity in the body of the complaint [as to] the specific circumstances constituting the overall fraudulent scheme."  See AIU Ins. Co., 2005 U.S. Dist. LEXIS at *34 (quoting In re Sumitomo Copper, 995 F. Supp. at 456).

Here, plaintiffs' bare allegations that defendants mailed various litigation-related documents on or about certain specified dates plainly fall short of these heightened pleading requirements.  The allegations both fail to identify any allegedly fraudulent or misleading statements by defendants or to adequately plead the existence of an overall scheme to defraud.

First, plaintiffs fail to allege which, if any, statements by the defendants, whether within the litigation-

related documents identified in the Complaint or otherwise, were allegedly false or misleading. Nor do plaintiffs particularize "the respect in which plaintiffs contend the statements were fraudulent." See Moore, 189 F.3d at 173; see also Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (affirming dismissal of RICO claims for "failure to plead fraud with particularity" and noting that "[e]ven if we were to find that the time and content of [the pleaded] communications met the Rule 9(b) standard, plaintiffs' claim must be dismissed because they failed to allege how those statements were fraudulent").

Rather, plaintiffs themselves appear at times to acknowledge that the mailings identified in the Complaint are not fraudulent or misleading. (See generally Pl. Bushman Mem. at 23-31 (asserting that Rule 9(b) can be satisfied even absent allegations that the litigation-related mailings themselves were fraudulent).) Yet even after acknowledging as much, and notwithstanding plaintiffs' vague and conclusory allegations of defendants' "Big Lie[s]," (see Compl. at ¶¶ 70-71, 124(B)), plaintiffs fail to isolate any other statements by defendants which are allegedly fraudulent. (See generally Compl.) Thus, in complete contravention of Rule 9(b)'s pleading standard, plaintiffs fail to identify *what* misrepresentations were made by defendants, *to whom* the statements were made, *when* or *where* the

statements were made, or *how* these statements were fraudulent or misleading.  See Moore, 189 F.3d at 173.

Moreover, plaintiffs make no attempt to "identify the purpose of the mailing[s] within" the defendants' overall alleged "fraudulent scheme" and further fail to adequately plead the existence of any scheme to defraud.  See id.  A "scheme to defraud" requires "fraudulent or deceptive means, such as material misrepresentation or concealment."  Ctr. Cadillac, Inc. v. Bank Leumi Trust Co., 808 F. Supp. 213, 227 (S.D.N.Y. 1992), aff'd, 99 F.3d 401 (2d Cir. 1995) (internal quotation and citation omitted); see also United States v. Pierce, 224 F.3d 158, 165 (2d Cir. 2000) ("In the context of mail fraud and wire fraud, the words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.") (internal quotations omitted). Crucially, any "scheme to defraud" under the mail and wire fraud statutes  "requires some element of deception" which may be "satisfied where the mailing itself is misleading or where there is some other deception which the mailing serves."  See McLaughlin v. Anderson, 962 F.2d 187, 192-93 (2d Cir. 1992) (internal citations and quotations omitted).

Here, in light of plaintiffs' failure to identify or articulate the nature of any fraudulent statements, and setting

aside plaintiffs' conclusory allegations of meritless state court litigation, plaintiffs fail to allege any scheme to defraud involving the required element of deception.  See *id.* at 192 ("An allegation of wrongful conduct . . . is insufficient since not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud.  The mail fraud statute requires some element of deception.") (internal quotations and citations omitted). Plaintiffs conclusorily allege that defendants' state court pleadings are "false" or "frivolous" and thereby indirectly and improperly seek to re-litigate such state claims (discussed *supra* n.23).  Plaintiffs also conclusorily allege defendants' use of fraudulent conveyances (discussed *supra* n.20).  Thus, even generously construing the allegations in the Complaint, plaintiffs fail to allege the existence of a scheme to defraud involving some element of deception.  Indeed, the court is at a loss to even decipher whom plaintiffs allege as the intended target of the ambiguously alleged schemes to defraud, whether plaintiffs themselves (see Pl. Bushman Mem. at 25 n.16 ("the intended victims of the scheme are Curtis and its insurer")), plaintiffs' malpractice insurer (see *id.*), the New York courts (see *id.* at 23 n.12 (noting "it is the courts" "who are deceived" by the scheme)), or the "corruptible" former clients of the Curtis Law Firm (see *id.* at 21 ("seven vulnerable but

greedy, [former clients of plaintiffs], who become victims

again"))[24]

In an attempt to save their amorphously alleged claims

of mail and wire fraud, plaintiffs rely on United States v.

Trapilo, 130 F.3d 547 (2d Cir. 1997), for the proposition that

they may adequately allege a scheme to defraud even without

alleging any "affirmative allegations of misrepresentations."

(See Pl. Bushman Mem. at 28 (citing Trapilo, 130 F.3d at 550).)

While certainly correct that a scheme to defraud may involve

mailings which are not themselves fraudulent, see Bridge, 553

U.S. at 647, plaintiffs err to the extent they suggest that

Trapilo dispenses with the required element of deception which

must underlie any "scheme to defraud" pursuant to the mail and

wire fraud statutes.[25] Unlike the facts alleged by plaintiffs

here, in Trapilo the Second Circuit found that defendants could

---

[24]     To the extent plaintiffs seek to allege a fraud on plaintiffs'
insurance carrier, the courts of New York state, or plaintiffs' former
clients – several of whom are named as defendants in this action – plaintiffs
cannot qualify as the targets of such schemes, and consequently lack standing
to claim damages resulting from these alleged frauds.  Abrahams v. Young &
Rubicam Inc., 79 F.3d 234, 239 (2d Cir. 1996) (holding that plaintiff lacked
standing under RICO because the plaintiff was not a "target" of the
fraudulent scheme, but rather was merely injured "by the fallout from the
scheme's exposure"), cert. denied, 519 U.S. 816 (1996); Cf. Baisch v.
Gallina, 346 F.3d 366, 375 (2d Cir. 2003) ("No precedent suggests that a
racketeering enterprise may have only one 'target,' or that only a primary
target has standing.").

[25]     To be sure, deception alone is not enough to adequately allege a
"scheme to defraud" under the mail and wire fraud statutes.  See Pierce, 224
F.3d at 165 ("A scheme to deceive, however dishonest the methods employed, is
not a scheme to defraud [under the mail and wire fraud statutes] in the
absence of a property right for the scheme to interfere with."); see also
United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) (finding a plan to
engage in deceit is not, without more, a scheme to defraud under the mail
fraud statute, and requiring some contemplated harm to victim).

be held liable for mail fraud even absent any fraudulent communications or misrepresentations because defendants had engaged in a "scheme to defraud" the Canadian government by smuggling liquor across the border in order to avoid paying taxes. Trapilo, 130 F.3d at 551-53. Thus, in Trapilo the defendants' scheme to defraud involved a deceptive scheme to deprive the Canadian government of tax revenue, id., and that case is therefore entirely consistent with the requirement that any scheme to defraud possess an "element of deception." See id. at 550 n.3 ("The term 'scheme to defraud' is measured by a nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society.") (internal quotations and citations omitted); see also McLaughlin, 962 F.2d at 193. By contrast, and as discussed above, plaintiffs' allegations here plainly lack the essential element of deception needed to set forth a scheme to defraud under the mail or wire fraud statutes because plaintiffs' allegations essentially amount to mere claims that defendants' state court lawsuits and defenses lack merit. Accordingly, plaintiffs' reliance on Trapilo is misplaced, and plaintiffs fail to adequately plead the existence of a scheme to defraud under Rule 9(b).[26]

---

[26]    For similar reasons that they fail to allege a scheme to defraud, plaintiffs also fail to sufficiently plead the requisite fraudulent intent on the part of defendants. See United States v. Regan, 937 F.2d 823, 827 (2d

Because plaintiffs' pleadings contain no allegations of fraud sufficient to withstand scrutiny under Rule 9(b), the RICO claims must also be dismissed under that Rule.  See S.Q.K.F.C. Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 634-36 (2d Cir. 1996) (affirming district court dismissal of RICO claims for failure to plead fraud with particularity as required by Rule 9(b)).

While defendants additionally argue a host of other – potentially valid – alleged infirmities with the Complaint, the court need not reach those arguments here, for absent any pattern of racketeering activity or sufficiently pleaded allegations of fraud, the substantive RICO violations alleged in Counts One through Five must be dismissed.  See Spool, 520 F.3d at 183 (dismissal of RICO claims appropriate where plaintiffs fails to adequately allege a "pattern of racketeering activity"); see also S.Q.K.F.C., 84 F.3d at 634-36 (dismissal of RICO claims appropriate where allegations are deficient under Rule 9(b)).

### 2. Absent any Substantive RICO Violations, the RICO Conspiracy Claims Also Fail

Because plaintiffs' substantive RICO claims are deficient and cannot survive a motion to dismiss, the RICO conspiracy claims in Counts Six through Ten must also be

Cir. 1991) (mail and wire fraud are "specific intent crimes" requiring proof of defendant's "conscious knowing intent to defraud") (internal quotation omitted).

dismissed. See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 164 (2d Cir. 2004) (where plaintiffs failed to "adequately allege a substantive violation of RICO," district court properly dismissed allegations of "a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); see also Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), as corrected, No. 95-7673, 1996 U.S. App. LEXIS 28747 (2d Cir. Aug. 26, 1996).

### C. Application to the State Law Claims

The federal RICO claims – the basis for this court's federal question jurisdiction – having been dismissed, the court is left with a discretionary choice as to whether it will retain supplemental jurisdiction over the Complaint's state law claims. 28 U.S.C. § 1367(c)(3). The court declines to exercise its supplemental jurisdiction over the Complaint's state law claims and those claims are therefore dismissed without prejudice. See id.; see also Sadallah v. City of Utica, 383 F.3d 34, 40 (2d Cir. 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court. The district court should therefore decline supplemental jurisdiction over any state law claims.") (citing United Mine Workers of America v. Gibbs, 383 U.S. 715,

726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (additional internal citation omitted)).

## II.  Motion to Amend/Correct/Supplement the Complaint

Under the Federal Rules of Civil Procedure, a court should "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). The rationale underlying this rule is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits" through an amended pleading. Foman v. Davis, 371 U.S. 178, 182 (1962). Conversely, however, where the underlying facts and circumstances could never be a "proper subject of relief," denial of leave to amend is within a court's discretion. See id.; see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) ("While Federal Rule of Civil Procedure 15(a) states that leave to amend should be granted 'when justice so requires,' motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.") (citing Foman, 371 U.S. at 182). Thus, "[i]t is well established that leave to amend a complaint need not be

granted where amendment would be futile." Ellis v. Chao, 336
F.3d 114, 127 (2d Cir. 2003).

Having thoroughly reviewed plaintiffs' seventy-page
proposed second amended complaint and sixty-one proposed
accompanying exhibits,[27] the court finds that plaintiffs'
proffered amendments would not affect the court's analysis as to
the failure of both the Complaint and the proposed second
amended complaint, as a matter of law, to adequately plead any
predicate acts. (See ECF Nos. 174-1-9, Pl. Proposed Second
Amended Complaint and proposed accompanying exhibits.) The
proposed amendments embellish details of the allegations, add
additional "non-party" participants, and even add additional
alleged predicate acts in the form of additional court filings
and litigation-related correspondence. (See id.) However, the
proposed amendments leave unchanged the nature of the alleged
predicate acts which remain "litigation activities" and which

---

[27] The parties have submitted the following briefs in connection with
plaintiffs' motion to amend/correct/supplement the complaint: ECF No. 174-
12, Memorandum in Support of Plaintiffs' Motion for Leave to Amend Their
Initial Complaint ("Pl. Amend. Mem."); ECF No. 174-1, Plaintiffs' Proposed
Amended Complaint ("Proposed Am. Compl."); ECF Nos. 174-2-9, Exhibits 1-61 to
Plaintiffs' Proposed Amended Complaint; ECF No. 174-10, Highlighted Proposed
Amended Complaint, ECF No. 174-11, Aff. of W. Robert Curtis; ECF No. 176,
Affidavit in Opposition to Plaintiff Motion; ECF No. 177, Affirmation of
Michael J. Cannon in Opposition to Plaintiffs' Motion to Amend/Supplement
Their Complaint; ECF No. 178, Answering Affirmation of Herbert Monte Levy on
Curtis Motion for Leave to Amend Plaintiffs' Amended Complaint; ECF No. 179,
Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend
Their Amended Complaint; ECF No. 183, Reply Affidavit by Stevi Brooks Nichols
in Opposition to Plaintiffs' Affirmation; ECF No. 185, Reply Mem. in Further
Support of Pl. Mot. for Leave to Amend; ECF No. 186, Declaration of W. Robert
Curtis.

cannot, as a matter of law, suffice as predicate acts.  (See id.)  Therefore, because the proposed amendments would have no impact on the basis for the court's dismissal and would accordingly be futile, further leave to amend is denied.  See, e.g., Burch, 551 F.3d at 126 (affirming district court's denial of leave to amend on basis of futility).

Moreover, prior to making their proposed amendments, plaintiffs had the benefit of reviewing defendants' fully briefed motions to dismiss the Complaint which detailed the grounds upon which defendants attacked the pleadings – including the very basis relied upon by this court for dismissal.  Despite this fair notice of the deficiencies in the Complaint, plaintiffs' proposed amendments fail to correct these issues. Under such circumstances, further leave to amend is inappropriate.  See, e.g., Curtis v. Citibank, N.A., 204 Fed. App'x. 929, 932 (2d Cir. 2006) (finding dismissal with prejudice proper where plaintiff has notice of complaint's deficiencies and fails to correct them) (citing Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1978) ("This is not a case  . . . where the appellant was unaware of the deficiencies in his complaint when he first amended it.  Here [the district court], in dismissing the initial complaint, had put plaintiff's counsel on the plainest notice of what was required.") (internal footnote omitted); see also Midwest Grinding Co., Inc. v. Spitz, 976 F.2d

1016, 1021 (7th Cir. 1992) (finding district court's denial of leave to amend justified where plaintiffs "had fair notice of its pleading deficiencies from the defendants' motion to dismiss, but it chose to ignore that warning").

The federal RICO causes of action in Counts One through Ten are therefore dismissed with prejudice and plaintiffs' motion to amend the pleadings is denied.

## III.    Motions to Disqualify Levy and Levitt as Counsel

Plaintiffs move to disqualify both Levy as counsel to DeGregorio[28] and Levitt as counsel to Turansky[29] under various New York Disciplinary Rules relating to conflicts, candor before the tribunal, attorney misconduct, and the witness-advocate rule. (See Pl. Levitt DQ Mem. at 10-12; Pl Levy DQ Mem. at 16-18.)

---

[28]    The parties have submitted the following motion papers in connection with plaintiffs' motions to disqualify Levy:  ECF No. 125, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Disqualify Levy ("Pl. Levy DQ Mem."); ECF Nos. 120, 121, 122, and 123, Declaration of W. Robert Curtis in Support of Plaintiffs' Motion to Disqualify Levitt ("Curtis Decl. #5"); ECF No. 119, Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Disqualify Levitt ("Pl. Reply Levitt DQ Mem."); ECF No. 127, Reply Declaration of W. Robert Curtis in Support of Plaintiffs' Motion to Disqualify Levy ("Curtis Decl. #6"); ECF Nos. 124, Affidavit of Levy in Opposition to Motion to Disqualify Levy ("Levy Aff. # 3"); ECF No. 126, Memorandum of Law in Opposition to Motion to Disqualify Levy ("Levy DQ Opp. Mem.").

[29]    The parties have submitted the following motion papers in connection with plaintiffs' motions to disqualify Levitt:  ECF No. 112, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Disqualify Levitt ("Pl. Levitt DQ Mem."); ECF Nos. 106, 108, and 110, Declaration of W. Robert Curtis in Support of Plaintiffs' Motion to Disqualify Levitt ("Curtis Decl. #4"); ECF No. 119, Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Disqualify Levitt ("Pl. Reply Levitt DQ Mem."); ECF No. 118, Reply Declaration of W. Robert Curtis in Support of Plaintiffs' Motion to Disqualify Levitt ("Curtis Decl. #5"); ECF Nos. 113 and 115, Affidavits of Levitt ("Levitt Aff. #3") and Turansky ("Turansky Aff.") in Opposition to Motion to Disqualify Levitt; ECF No. 117, Memorandum of Law on the Issue of Levitt's Disqualification ("Levitt DQ Opp. Mem.").

Because the complaint is dismissed with prejudice for failure to state a claim, the motions to disqualify Levy and Levitt are denied as moot.  See Fitzgerald v. Field, No. 99-cv-3406, 1999 U.S. Dist. LEXIS 17372, at * 11 (S.D.N.Y. Nov. 9, 1999), aff'd, 2000 U.S. App. LEXIS 14165 (2d Cir. Jun. 12, 2000) (denying motion to disqualify counsel in light of ruling dismissing the complaint and denying leave to amend).

## IV.    Motion for Sanctions

The Levitt defendants and Turansky seek sanctions against plaintiffs under Rule 11.  Under the sanctions regime prescribed by Rule 11, if the court determines that an attorney, law firm, or party has "violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court," a court may impose sanctions either upon a motion for sanctions (Fed. R. Civ. P. 11(c)(2)), or upon the court's own initiative (Fed. R. Civ. P. 11(c)(3)).  Williamson v. Recovery L.P., 542 F.3d 43, 51 (2d Cir. 2008) (citing Fed. R. Civ. P. 11).  Having failed to make a motion "separately from any other motion . . . [which] describe[s] the specific conduct that allegedly violates Rule 11(b)" in accordance with the requirements of Rule 11(c)(2), the Levitt defendants and defendant Turansky urge the court to "take action on its own" to sanction plaintiffs.  (Levitt Mem. at 24, see also Levitt Reply Mem. at 8-9.)

Because the Levitt defendants and Turansky have failed to comply with Rule 11's procedural requirements, the court denies the defendants' application for attorneys' fees, costs, and damages pursuant to Rule 11(c)(2).  See, e.g., Williamson, 542 F.3d at 51-52 (affirming district court's denial of Rule 11 sanctions where defendants "failed to meet the procedural requirements of Rule 11(c)).

Additionally, the court declines to exercise its authority to sanction plaintiffs *sua sponte* pursuant to Rule 11(c)(3).  However, given the weight of authority discussed at length above, the long history of litigation between some of the parties in this case, and the currently ongoing state court litigation involving many of these same parties, the court notes its serious concerns with the apparent motivations for plaintiffs' initiation of this action.[30]  The court therefore takes this opportunity to explicitly warn plaintiffs that it now

---

[30]    Plaintiff Curtis previously brought another RICO action against two lawyers, their respective law firms, a consulting doctor, and two insurance adjustment agents (collectively, "Massachusetts defendants") in the District of Massachusetts alleging that the Massachusetts defendants engaged in a fraudulent scheme to maximize the insurance company's profits by "systematically deny[ing] coverage, delay[ing] settlement, and compel[ing] claimants . . . to litigate." See W. Robert Curtis v. Duffy, 742 F. Supp. 34, 37 (D. Mass. 1990).  In that case, the Honorable Walter Jay Skinner granted defendants' motion to dismiss and found that the case had "enough of the indicia of a purely vindictive action to warrant an evidentiary hearing" on Rule 11 sanctions.  Id. at 39.  Ultimately, the Massachusetts court awarded $7,500 in sanctions against Curtis.  (See Levy Aff. #1, Ex. 10 (Judgment in Case No. 89-0913-S, W. Robert Curtis v. Duffy).)  Some such indicia may also be present in the instant action, however, the court declines to schedule an evidentiary hearing and instead puts plaintiffs on notice than any further suits in this court based on similar allegations are likely to result in sanctions.

considers plaintiffs to have notice of the case law cited and discussed here and to advise plaintiffs that further efforts to convert garden-variety pleadings and litigation correspondence into racketeering acts without satisfying RICO's substantive elements and Rule 9(b), as discussed above, may leave the court with no choice but to impose sanctions.

## CONCLUSION

For the reasons explained above, the federal RICO claims are dismissed in their entirety, with prejudice, and against all defendants, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court declines to exercise its supplemental jurisdiction over plaintiffs' state law claims, which are dismissed without prejudice. 28 U.S.C. § 1367(c)(3). The motion to amend or supplement the complaint is denied as futile. The motions to disqualify Levitt and Levy as counsel are denied as moot. The motion for sanctions is denied, and the court further declines to *sua sponte* issue sanctions.

The Clerk of the Court is respectfully requested to enter judgment in favor of defendants, to mail a copy of this

memorandum and order to *pro se* defendant Nichols, and to close this case.[31]


**SO ORDERED.**

Dated: December 15, 2010
       Brooklyn, New York

_____
                                         /s/
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

---

[31]     In light of the dismissal of the Complaint, the court declines to consider certain supplemental submissions concerning defendant Nichols' "evidentiary exhibits to [her] Motion for Contempt" in state court.  (See ECF No. 187, Ltr. from Nichols dated 7/6/10; see also ECF Nos. 188, Ltr. from Curtis dated 7/16/10; 189, Ltr. from Curtis dated 7/19/10; 190, Ltr. from Nichols dated 7/23/10.)