```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
CURTIS & ASSOCIATES, P.C. and W. ROBERT
CURTIS, Sc.D., J.D.,                            NOT FOR PUBLICATION

        Plaintiffs,
                                                **MEMORANDUM & ORDER**
            - against -
                                                09-CV-890 (KAM) (RER)
THE LAW OFFICES OF DAVID M. BUSHMAN, ESQ.;
DAVID M. BUSHMAN, ATTORNEY AT LAW; DAVID
M. BUSHMAN, ESQ.; JANET TURANSKY
CALLAGHAN; STEVI BROOKS NICHOLS; JEFFREY
LEVITT, ESQ.; JEFFREY LEVITT, ATTORNEY AT
LAW; HERBERT MONTE LEVY, ESQ.; LAW OFFICES
OF HERBERT MONTE LEVY, ESQ.; JOHN DOE,
ESQ.; LAW OFFICES OF JOHN DOE, ESQ.; JANE
DOE, ESQ.; LAW OFFICES OF JANE DOE, ESQ.;
and EILEEN DEGREGROIO,

        Defendants.
-------------------------------------X
```
**MATSUMOTO,** UNITED STATES DISTRICT JUDGE**:**

The alleged facts of this civil action asserting violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq. and various New York statutes and common laws have been set forth in a prior decision of this court, familiarity with which is assumed. See Curtis v. Law Offices of David M. Bushman, Esq., No. 09-cv-890 (KAM), 2010 U.S. Dist. LEXIS 132803 (E.D.N.Y. Dec. 15, 2010). On December 15, 2010, the court dismissed this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and plaintiffs timely appealed.

Defendants The Law Offices of David M. Bushman, Esq., David M. Bushman, Attorney at Law, and David M. Bushman, Esq. (collectively, the "Bushman defendants"); Jeffrey Levitt, Esq. and Jeffrey Levitt, Attorney at Law, (collectively, the "Levitt defendants"); Herbert Monte Levy, Esq. and Law Offices of Herbert Monte Levy, Esq. (collectively, the "Levy defendants"); Eileen DeGregorio ("DeGregorio"), Janet Turansky Callaghan ("Turansky"); and Stevi Brooks Nichols ("Nichols"); (together, "defendants") now move pursuant to Federal Rule of Appellate Procedure 7 ("Rule 7") for the posting of a cost bond by plaintiffs Curtis & Associates, P.C. (the "Curtis Firm") and W. Robert Curtis, Sc.D., J.D. ("Curtis"), (together, "plaintiffs") as a condition of appeal.[1] Specifically, the Bushman defendants, DeGregorio, Levy, and Nichols each request that plaintiffs post a bond in the amount of $25,000, and together, Turansky and the Levitt defendants request that plaintiffs post a bond in the amount of $25,000. In total, defendants request that plaintiffs post bonds in the amount of $125,000.

---

[1] The parties have submitted the following letter motions in connection with the applications by all defendants for the posting of a cost bond: ECF No. 195, Ltr. Mot. by Turansky and the Levitt defendants dated 2/3/2011 ("Levitt Ltr."); ECF No. 196, Ltr. Mot. by the Bushman defendants dated 2/3/2011 ("Bushman Ltr."); ECF No. 197, Ltr. Mot. by DeGregorio dated 2/3/2011 ("DeGregorio Ltr."); ECF No. 199, Ltr. Mot. by the Levy defendants dated 2/3/2011 ("Levy Ltr.");ECF No. 200, Ltr. Mot. by Nichols dated 2/4/20111 ("Nichols Ltr."); ECF No. 201, Ltr. Opp. by plaintiffs dated 2/11/2011 ("Pls. Ltr.").

For the reasons that follow, defendants' motions for the posting of a cost bond are granted in part.

**DISCUSSION**

I. **Appropriateness of a Bond**

    **A. Legal Standard**

Rule 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The purpose of the rule is to protect the appellee from the risk that an unsuccessful appellant will fail to pay costs to which the appellee is entitled if the appellee prevails on the appeal. See Adsani v. Miller, 139 F.3d 67, 70 (2d Cir. 1998). "The power to impose an appeal bond under [R]ule 7 has been specifically given to the discretion of the district court" because that court is presumed "familiar with the contours of the case appealed." Id. at 79.

District courts determining whether an appeal bond is appropriate consider the following factors: (1) the financial ability of the appellants to post the bond; (2) the risk of the appellants' non-payment if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellants have shown any "bad faith or vexatious conduct." Baker v. Urban

Outfitters, Inc., No. 01-cv-5440 (LAP), 2006 U.S. Dist. LEXIS 90120, at *1 (S.D.N.Y. Dec. 12, 2006).

**B. Application**

First, plaintiffs have not submitted any financial information demonstrating an inability to post a cost bond. The court therefore finds that plaintiffs have conceded this issue and have the financial ability to post a bond.[2] See, e.g., In re Air Cargo Shipping Servs., No. 06-md-1775 (JG), 2010 U.S. Dist. LEXIS 27242, at *6 (E.D.N.Y. Mar. 22, 2010) (reaching same conclusion on similar facts); In re Currency Conversion Fee Antitrust Litig., No. 01-mdl-1409 (WHP), 2010 U.S. Dist. LEXIS 27605, at *5 (S.D.N.Y. Mar. 5, 2010) (same); In re AOL Time Warner, Inc., Sec. & ERISA Litig., No. 02-cv-5575 (SWK), 2007 U.S. Dist. LEXIS 69510, at *2 (S.D.N.Y. Sept. 20, 2007) (same); Baker, 2006 U.S. Dist. LEXIS 90120, at *2 (same).

Second, various defendants assert that there exists a high risk that plaintiffs will fail to pay costs if the appeal fails. Specifically, defendants highlight the assertion by DeGregorio and her counsel, Levy, that the Curtis Firm has failed to pay a $14,000 judgment owing to DeGregorio for more than two years. (See, e.g., Levy Ltr. at 1.) Plaintiffs counter that this assertion is "simply untrue" because Levy has

---

[2] Plaintiffs themselves note that while the Curtis Firm has allegedly been "put out of business," Curtis personally owns "a valuable townhouse in TriBeCa." (Pls. Ltr. at 2 n.3.)

4

attached "a significant account" belonging to the Curtis Firm and the balance is "largely off-set by an unpaid judgment" of the Curtis Firm against DeGregorio. (Pls. Ltr. at 4.) Plaintiffs thus do not dispute the fact of an unsatisfied $14,000 judgment. (See id.) Moreover, plaintiffs concede that the $14,000 judgment has neither been collected nor entirely accounted for by the various offsets identified by plaintiffs. (See id. (noting balance of judgment owing is "largely off-set").) There therefore appears to be some risk that plaintiffs will fail to pay any costs owing to defendants should the appeal be unsuccessful.

Third, regarding the merits of the appeal, the court notes that plaintiffs have identified no legal authorities or factual matters that this court previously overlooked or erroneously considered in deciding the parties' various motions prior to issuing its December 15, 2010 memorandum and order dismissing this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (See generally Pls. Ltr. at 4.) Rather, plaintiffs' appeal appears to consist largely of the same legal arguments previously rejected by this court in its December 15, 2010 memorandum and order.[3] (See id.) Absent any new information this court previously overlooked, and

---

[3] The Levy defendants have noted, however, that on appeal plaintiffs have "enlarged their claim to include a charge of corruption of state court judges who have ruled against them." (Levy Ltr. at 2.)

5

given this court's previous dismissal of this action after carefully considering essentially the same arguments plaintiffs now raise on appeal, it cannot be surprising that this court views the appeal as lacking merit and anticipates that it will be unsuccessful.

Fourth, as to whether the appellants have shown any "bad faith or vexatious conduct," see Baker, 2006 U.S. Dist. LEXIS 90120, at *1, as set forth in the December 15, 2010 memorandum and order, the court has previously noted the lack of a legal basis for plaintiffs' claims and "its serious concerns with the apparent motivations for plaintiffs' initiation of this action," see Curtis, 2010 U.S. Dist. LEXIS 132803, at *80. The court therefore finds that evidence suggests the possibility that plaintiffs have proceeded in bad faith.

Weighing all four of these factors together, the court concludes that a cost bond pursuant to Rule 7 is warranted.

## II. Amount of the Bond

### A. Legal Standard

"Costs" under Rule 7 first includes the enumeration of "costs" found in Federal Rule of Appellate Procedure 39 ("Rule 39"). See Adsani, 139 F.3d at 75 n.9 (term "costs" under Rule 7 includes "the enumeration of some 'costs' found in Rule 39"). Rule 39 provides that if the appeal is dismissed or judgment is affirmed, "costs" are taxed against the appellant in the form of

6

the costs for preparing the record such as photocopying, printing, binding, and service. Fed. R. App. P. 38(a), (c), (e); see also In re Currency Conversion Fee, 2010 U.S. Dist. LEXIS, at *6. Such costs must be taxed at the Second Circuit rate of $0.20 per page. See Fed. R. App. P. 39(c); Second Circuit Local Rule 39.1.

In addition to the "costs" taxable under Rule 39, in the Second Circuit a Rule 7 bond may also include attorney's fees but only if the "relevant substantive statute" underlying the appeal includes a fee-shifting provision that allows such costs to be shifted to the prevailing party. See Adsani, 139 F.3d at 75 n.9 (definition of "costs" includes that which is "contained in the relevant substantive statute under which appeal is sought"). Under this standard, the Copyright Act has been determined to be a fee-shifting statute which includes attorney's fees for the prevailing party in its definition of "costs," while the Clayton Act, which provides for attorneys' fees "only to the plaintiffs who prove an antitrust injury," not just to a prevailing party, has been rejected as a fee-shifting statute and found not to permit assessment of attorneys' fees on a Rule 7 bond. See Adsani, 139 F.3d at 79 (finding that Copyright Act "includes attorneys' fees 'as part of the costs' which may be taxed upon appeal") (citation omitted in original); see also In re Currency Conversion Fees, 2010 U.S. Dist. LEXIS

7

27605, at *7 (finding Clayton Act, unlike the Copyright Act, does not provide attorneys' fees to prevailing party but only to the party allegedly injured by an antitrust violation) (citing Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 959 (9th Cir. 2007)).

Finally, "costs" under a Rule 7 bond should not include amounts covering potential sanctions and/or attorneys' fees which may later be taxed by the Appeals Court under Rule 38 of the Federal Rules of Appellate Procedure ("Rule 38"). See, e.g., In re Initial Public Offering Sec. Litig., 721 F. Supp. 2d 210, 217 (S.D.N.Y. 2010) (concluding that "[a]s recognized by a number of other courts," to "includ[e] attorneys' fees [pursuant to Rule 38] in [a] Rule 7 bond would be improper"); see also In re Currency Conversion Fees, 2010 U.S. Dist. LEXIS 27605, at *8-9 (noting that "imposition of sanctions [under Rule 38] is a question for the Court of Appeals to determine" and concluding that Rule 38 therefore "is not a basis for the inclusion of attorney's fees in the [appeal] bond in this case"); In re AOL Time Warner, 2007 U.S. Dist. LEXIS 69510, at *19 (finding Rule 38 sanctions to be "a matter for the court of appeals" and finding that such amount therefore should not be included in a cost bond under Rule 7). Rule 38 provides that "[i]f a *court of appeals* determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee."

Fed. R. App. P. 38 (emphasis added). Because the question of frivolity underlying a Rule 38 sanction is for the Court of Appeals to determine, courts have recognized that covering such potential sanctions and attorneys' fees in an appeal bond "risks infringing" on the Court of Appeals' authority and "saddling appellants with a potentially prohibitive bond" based upon no more than an "unpredictable" potential of an award. See In re AOL Time Warner, 2007 U.S. Dist. LEXIS 69510, at *19.

### B. Application

Five individual and groups of defendants here have each requested that plaintiffs post bond in the amount of $25,000, for a total requested bond amount of $125,000. Defendants have failed to specify any basis for these calculations, however, and have instead merely vaguely suggested that such amounts are justified to secure their "costs," "attorneys' fees" pursuant to Rule 38, and "sanctions."

First, with respect to taxable costs under Rule 39, $25,000 plainly exceeds any reasonable expectation of defendants' taxable costs on appeal. See Fed. R. App. P. 39(e). Taxed at the Second Circuit rate of $0.20 per page, the court finds that an appeal bond in the amount of $5,000 is sufficient to protect all of the defendants' costs on appeal should they prevail. See Fed. R. App. P. 39; see also RBFC One, LLC v. Zeeks, Inc., No. 02-cv-3231 (DFE), 2005 U.S. Dist. LEXIS 19148,

at *8 (S.D.N.Y. Sept. 2, 2005) (imposing $5,000 appeal bond for taxable costs by plaintiff limited liability company); cf. In re Initial Public Offering, 721 F. Supp. 2d at 211, 218 (requiring $25,000 appeal bond for taxable costs in appeal involving 309 consolidated actions, fifty-five investment banks, thousands of individual defendants, and more than seven million potential class members); In re Currency Conversion Fees, 2010 U.S. Dist. LEXIS 27605, at *2, *9 (requiring $50,000 cost bond in appeal from multi-district litigation where twelve separate appeals from the court's final judgment were filed).

Second, including sanctions or attorneys' fees in the Rule 7 bond in this case is unwarranted. No party has suggested that the underlying statute at issue here includes a fee-shifting provision, and the court finds that the statute does not. Indeed, the civil RICO statute underlying the appeal in this case, 18 U.S.C. § 1964, provides for the recovery of "a reasonable attorney's fee" not to the prevailing party, but instead only to one who is "injured in his business or property" by a RICO violation. See 18 U.S.C. § 1964(c). As such, the civil RICO action underlying plaintiffs' appeal does not provide for fee-shifting and therefore cannot serve as a basis for inclusion of attorneys' fees in the Rule 7 bond here. See In re Currency Conversion Fees, 2010 U.S. Dist. LEXIS 27605, at *7 (rejecting request to assess attorneys' fees in Rule 7 bond

where Clayton Act does not provide attorneys' fees to prevailing party but only to the party allegedly injured by an antitrust violation) (citation omitted); cf. Adsani, 139 F.3d at 79 ("where, as here, a federal statute includes attorney's fees 'as part of the costs' which may be taxed upon appeal, the district court may factor these fees into its imposition of the bond for costs") (citation omitted in original). Thus, the relevant underlying statute provides no basis for the inclusion of attorneys' fees in the instant appeal bond.

Nor is there a basis for including attorneys' fees in the appeal bond pursuant to Rule 38, although at least two defendants have requested for this court to do so. (See DeGregorio Ltr. at 1; Levy Ltr. at 1.) As noted above, under Rule 38, it is the Court of Appeals that is charged with determining whether sanctions and/or attorneys' fees are warranted. See Fed. R. App. P. 38. Therefore, it would be improper for this court in assessing an appeal bond to infringe upon the Second Circuit's authority and speculate as to whether, and in what amount, sanctions and/or attorneys fees may or may not be awarded under Rule 38 in this action. See In re AOL Time Warner, 2007 U.S. Dist. LEXIS 69510, at *19 (including potential Rule 38 sanctions and attorney fees in an appeal bond "risks infringing" on the Court of Appeals' authority and "saddling appellants with a potentially prohibitive bond"). Therefore,

there is no basis for including an amount in the appeal bond to cover potential sanctions or attorneys' fees under Rule 38.

## CONCLUSION

For the reasons explained above, defendants' motions to require plaintiffs' posting of an appeal bond are granted in part. Accordingly, it is hereby ORDERED that no later than March 25, 2011, together, plaintiffs post an appeal bond with the Clerk of the Court in the amount of $5,000 to cover the taxable costs of appeal. The court concludes that such an amount is reasonable and necessary to protect defendants and ensure payment of costs on appeal. See Fed. R. App. P. 7. The Clerk of the Court is respectfully requested to mail a copy of this memorandum and order to *pro se* defendant Nichols.

**SO ORDERED.**

Dated: March 9, 2011
      Brooklyn, New York

                                          /s/
                            **KIYO A. MATSUMOTO**
                            United States District Judge
                            Eastern District of New York